*In re* TK

Docket No. 316944. Submitted June 3, 2014, at Detroit. Decided September 23, 2014, at 9:15 a.m.

The Department of Human Services filed a petition in the Oakland Circuit Court, Family Division, requesting that the court exercise jurisdiction over five minor children of Kenneth Sturm. The petition listed only Sturm as a respondent and alleged that he had admitted that he had sexually assaulted one of the children, his daughter TK. The petition sought termination of Sturm's parental rights. The court authorized the petition. Because of Sturm's incarceration and the lack of evidence of neglect on the part of the children's mother, the children were allowed to remain in the mother's home. Although the mother thereafter received services from the department, a petition was filed by the department seeking the removal of the children from the care of their mother (hereafter "respondent") because one of the children had been acting out sexually toward a sibling. The court entered an order dated May 4, 2011, that authorized the petition and the children were removed and placed under the care and supervision of the department. Respondent entered a no contest plea to allegations that she failed to properly protect and supervise the children, thereby providing the court with jurisdiction over the children. Although the four minor boys were placed in residential childcare facilities, TK was placed in a licensed foster home. A permanency planning hearing was conducted in July 2012. At that time, TK was 14 years old and had been in the department's care for 14 months and in the same foster home for 12 months. At the hearing, two foster-care workers and TK's therapist opined that a guardianship would be in TK's best interests. A clinician who conducted a psychological evaluation of respondent stated that respondent had difficulty identifying and responding to her children's needs and that it was unlikely that respondent would make any meaningful progress in the future. The clinician recommended a long-term permanent placement that could allow respondent to maintain contact with the children. At the conclusion of the hearing, the court, Linda S. Hallmark, J., adopted the department's recommendations.

An order was subsequently entered appointing TK's foster mother as TK's guardian. Respondent, whose parental rights were not terminated, appealed challenging the imposition of a guardianship.

The Court of Appeals *held*:

1. The appointment of a guardian under MCL 712A.19a(7)(c) is not tantamount to a de facto termination of parental rights. Therefore, the department was not required to prove statutory grounds for termination of parental rights by clear and convincing evidence.

2. Respondent was afforded procedural due process in the child protective proceedings. The statutory provisions governing guardianships for juveniles do not violate procedural due process principles. There was nothing arbitrary about the trial court's imposition of a guardianship under the facts of this case. There is no merit to respondent's challenge on substantive due process grounds.

3. The trial court did not abuse its discretion when it imposed a guardianship rather than choosing to continue long-term foster care or returning TK to respondent's home.

4. The trial court did not clearly err when it concluded that reasonable efforts had been made by the department toward reunification and that contact between TK and respondent was not reasonable under the circumstances.

Affirmed.

PARENT AND CHILD — GUARDIANSHIPS.

The appointment of a guardian for a child under MCL 712A.19a(7)(c) is not tantamount to a de facto termination of parental rights.

*Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Chief, Appellate Division, and *Julie A. McMurtry*, Assistant Prosecuting Attorney, for the Department of Human Services.

*Nancy A. Plasterer*, guardian ad litem for TK.

*William Lansat* for respondent.

Before: WILDER, P.J., and SAAD and K. F. KELLY, JJ.

WILDER, P.J. In this child protective proceeding, respondent appeals as of right the trial court's decision to place respondent's teenage daughter, TK, with a foster mother appointed as her guardian pursuant to MCL 712A.19a(7)(c) after the child had been made a temporary ward of the court. Respondent's parental rights were not terminated. We affirm.

I

Respondent is the mother of seven children. The five youngest children (four boys and one girl, TK—the child at issue in this appeal) have the same biological father, Kenneth Sturm. In 1998, respondent's children were removed from her care following allegations that Sturm had physically abused respondent's two oldest sons from a prior relationship. Respondent was provided with services and the court's jurisdiction was terminated in 2000. In January 2011, Sturm admitted to the police that he had been sexually abusing TK for several years. As a result of the abuse, TK suffered from posttraumatic stress disorder. A petition was filed on February 4, 2011, requesting that the court exercise jurisdiction over the children[1] and terminate Sturm's parental rights at the initial dispositional hearing. Only Sturm was listed as a respondent in this petition. After a preliminary hearing, the petition was authorized and, because of Sturm's incarceration[2] and no evidence of neglect on respondent's part, the five children were allowed to remain in respondent's home.

---

[1] By this time, respondent's two oldest children were adults and, therefore, not subject to any of the relevant petitions.

[2] Sturm was convicted of four counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a). On August 10, 2011, he was sentenced to 25 to 60 years' imprisonment for each conviction. His parental rights were eventually terminated by an order entered on November 16, 2011.

After the filing of the initial petition, respondent and the children were offered wide-ranging services.[3] Despite the provision of these services, a separate petition was filed on May 2, 2011, seeking removal of the children from respondent's care because one of respondent's male children had been acting out sexually toward a sibling. By an order dated May 4, 2011, the petition was authorized and the children were removed and placed under the care and supervision of the Department of Human Services. Respondent entered a no contest plea to allegations that she failed to properly protect and supervise her children, thereby providing the court with jurisdiction over the children. A parent-agency treatment plan was initiated and dispositional review hearings were regularly conducted.

Each of respondent's five children in petitioner's care had varying needs that necessitated different placements. Generally, however, the four boys were placed in residential childcare facilities and respondent thereafter had difficulty during parenting time with them. During certain periods, some of the boys were briefly returned to respondent's care. By contrast, TK was placed in a licensed foster home in July 2011, where she remained throughout these proceedings. By all accounts, TK flourished in the foster home, did well in school, and participated in extracurricular activities.

By the time of the July 30, 2012 permanency planning hearing, TK was 14 years old and had been in petitioner's care for 14 months and in the same foster home continuously for 12 months. Two foster-care workers and TK's therapist opined that a guardianship would be in the child's best interests. The therapist

---

[3] Services the family received during the lower court proceedings included individual counseling, a psychological assessment, family therapy, a parent coordinator, and employment and financial assistance.

explained that TK required "certainty." TK was fearful and anxious about contact with respondent as a result of respondent's failure to protect TK from her father and inappropriate comments respondent made during supervised visitation. TK requested that there be no visitation or, alternatively, extremely close supervision by the foster-care workers. According to a foster-care worker, if a guardian was appointed, the guardian would dictate whether visitation occurred. The therapist opined that TK's participation in family therapy with her mother would not be appropriate at that time.

A foster-care worker explained that the progress made in this case was not what one would have expected in the time it had been opened; despite the services received by the family, it appeared as if they were at "day one" in the case. A clinician who conducted respondent's psychological evaluation opined that respondent had difficulty identifying her children's needs and responding to them and that it was unlikely that respondent would make any meaningful progress in the future. The clinician recommended a long-term permanent placement that could allow respondent to maintain contact with her children.

At the conclusion of the July 30, 2012 permanency planning hearing, the trial court, adopting petitioner's recommendations, changed TK's permanency plan from one seeking reunification to one that sought appointment of the child's foster mother as guardian. Respondent was opposed to the guardianship and requested additional time to work toward reunification with her daughter. Respondent ultimately spent several additional months participating in her treatment plan because a guardianship was not formally established by order until April 29, 2013. On June 27, 2013, respon-

dent filed her claim of appeal, challenging the lower court's imposition of a guardianship.

II

For her first claim of error, respondent argues that the guardianship imposed under MCL 712A.19a violates her due process rights because the guardianship constitutes a de facto termination of her parental rights without establishing, by clear and convincing evidence, a statutory ground for termination. We disagree. In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005). While respondent objected to the appointment of a guardian, she did not object on constitutional grounds. Therefore, this issue has not been preserved. Generally, whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). However, because the issue presented is an unpreserved claim of constitutional error, this Court will review for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

At the outset we note that, for purposes of this issue, respondent does not claim that the trial court failed to comply with the applicable statutes and court rules governing guardianships for juveniles. Instead, respondent claims that the statutory provisions regarding guardianships for juveniles are constitutionally infirm. Thus, the analysis of this issue begins with the provisions of MCL 712A.19a.

MCL 712A.19a(1) mandates that if a child remains in foster care and parental rights to the child have not been terminated, the court shall conduct a permanency planning hearing within 12 months after the child was removed from his or her home. If the parental rights to the child have not been terminated and the court determines at a permanency planning hearing that the return of the child to the child's parent would not cause a substantial risk of harm, the court shall order the child returned to his or her parent. MCL 712A.19a(5). However, if the court determines at a permanency planning hearing that a child should not be returned to his or her parent, the court may order the agency to initiate proceedings to terminate parental rights. MCL 712A.19a(6). Further, and most relevant to this case, MCL 712A.19a(7) provides yet additional alternatives:

> (7) If the agency demonstrates under subsection (6) that initiating the termination of parental rights to the child is clearly not in the child's best interests, or the court does not order the agency to initiate termination of parental rights to the child under subsection (6), then the court shall order 1 or more of the following alternative placement plans:

> (a) If the court determines that other permanent placement is not possible, the child's placement in foster care shall continue for a limited period to be stated by the court.

> (b) If the court determines that it is in the child's best interests based upon compelling reasons, the child's placement in foster care may continue on a long-term basis.

> (c) *Subject to subsection (9), if the court determines that it is in the child's best interests, appoint a guardian for the child, which guardianship may continue until the child is emancipated.* [Emphasis added.]

Contrary to respondent's assertions, the appointment of a guardian is not tantamount to a de facto termination of parental rights. As petitioner argues, the

guardianship for a juvenile contemplated by MCL 712A.19a(7)(c) does not permanently separate a parent and child. It allows the child to keep a relationship with the parent when placement with the parent is not possible. Indeed, the appointment of a guardian is done in an effort to avoid termination of parental rights. See *In re Mason*, 486 Mich 142, 168-169; 782 NW2d 747 (2010). Unlike termination of parental rights, the appointment of a guardian for a juvenile is not necessarily permanent. The court is required to review the guardianship annually and may conduct additional reviews, if necessary. MCL 712A.19a(11). Under MCL 712A.19a(13), the court may, on its own motion or upon petition from the Department of Human Services or the child's lawyer guardian ad litem, hold a hearing to determine whether a guardianship shall be revoked. Under MCL 712A.19a(14), a guardian may petition the court for permission to terminate the guardianship. Even the parent has the ability to seek termination of the guardianship. MCR 3.979(F)(1)(b) provides that "[a] juvenile guardian *or other interested person* may petition the court for permission to terminate the guardianship." (Emphasis added.) Further, while the guardian assumes the legal duties of a parent pursuant to MCL 712A.19a(8) and MCL 700.5215, the parent is still under many circumstances permitted to maintain a relationship with the child.

We agree that, if the appointment of a guardian for a juvenile were the equivalent of a termination of parental rights, petitioner, to comply with due process, would have been required to prove parental unfitness, i.e., statutory grounds for termination by clear and convincing evidence. *In re B & J*, 279 Mich App 12, 23; 756 NW2d 234 (2008). However, the appointment of a guardian for a juvenile is not tantamount to a de facto termination of parental rights. Petitioner was not re-

quired to prove statutory grounds for termination of parental rights by clear and convincing evidence.

Respondent has also failed to establish a violation of her right to due process before the appointment of the guardian for TK. It is axiomatic that a parent has a fundamental liberty interest in the care, custody, and management of his or her child, which is constitutionally protected. *In re Rood*, 483 Mich at 91 (opinion by CORRIGAN, J.). "Both the Michigan Constitution and the United States Constitution preclude the government from depriving a person of life, liberty, or property without due process of law." *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005).

There are two types of due process: procedural and substantive. Procedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker. *In re Rood*, 483 Mich at 92 (opinion by CORRIGAN, J.). The essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests. *AFT Mich v Michigan*, 297 Mich App 597, 622; 825 NW2d 595 (2012). Ultimately, due process requires fundamental fairness. *In re Rood*, 483 Mich at 92 (opinion by CORRIGAN, J.).

A

Generally, three factors should be considered to determine what is required by procedural due process:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [*In re Brock*, 442 Mich

101, 111; 499 NW2d 752 (1993), quoting *Mathews v Eldridge*, 424 US 319, 332, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

Applying the foregoing factors, we conclude that respondent was afforded procedural due process in this child protective proceeding.

First, the private interest involved is a parent's fundamental liberty interest in the care, custody, and management of her child. Second, a review of the applicable statutes and corresponding court rules indicates that the procedures employed in the appointment of a guardian for a juvenile ensure that there will not be an erroneous deprivation of these interests. The statute authorizing the guardianship contemplates the appointment of a guardian only after the permanency planning hearing. MCL 712A.19a; MCR 3.976. Under MCL 712A.19a(4) and MCR 3.976(C), a parent must be given written notice of the hearing no less than 14 days before it is held. The notice must advise the parent that "the hearing may result in further proceedings to terminate parental rights." *Id.* Of particular note, MCL 712A.19a(12) requires that the court consider "any written or oral information concerning the child from the child's parent, guardian, custodian, foster parent, child caring institution, relative with whom the child is placed, or guardian ad litem in addition to any other evidence, including the appropriateness of parenting time, offered at the hearing." Further, the appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests. MCL 712A.19a(7). Then, the court must find that it is in the child's best interests to appoint a guardian. MCL 712A.19a(7)(c) and MCR 3.979(A).

Turning to the third factor, we must consider the government's interest. In this case, there would clearly be a burden on the system to maintain the court wardship or to implement additional procedures. However, the primary governmental interest is the welfare of the minor child. In this case, reunification was not a viable option and TK had been flourishing in the appointed guardian's foster home for 21 months. As petitioner argues, the guardianship also fostered the continued relationship between TK and her siblings. This factor weighs in favor of a finding that the guardianship provisions pertaining to juveniles withstand constitutional scrutiny.

A parent is given notice and an opportunity to be heard before the appointment of a guardian. The statutory scheme employs multiple safeguards to ensure that there is not an erroneous deprivation of a parent's liberty interest in caring for his or her child. Thus, we find no merit to respondent's argument that the statutory provisions governing guardianships for juveniles violate procedural due process principles.

B

There is also no merit to a challenge on substantive due process grounds. As indicated, the arbitrary deprivation of a liberty or property interest is the essence of a substantive due process claim. The person claiming a deprivation of substantive due process must show that the action was so arbitrary as to shock the conscience. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 200; 761 NW2d 293 (2008). A thorough review of the record demonstrates nothing arbitrary about the trial court's imposition of a guardianship under the facts in this case. TK's father sexually abused her and she suffered from posttraumatic stress disorder, requiring

therapy. In therapy, TK addressed anger issues related to respondent's failure to protect her from her father's abuse. While respondent had difficulty responding to TK's needs and had poor prospects for progress, TK's foster home allowed her to flourish and provided "certainty" and stability. Based upon these facts, there was nothing arbitrary about the trial court's decision to appoint a guardian.

While respondent had a due process liberty interest in caring for her daughter, she has failed to demonstrate plain error in her claim that the appointment of a guardian amounted to a de facto termination of parental rights without due process of law.

III

Next, respondent argues that rather than impose a guardianship, the trial court should have considered as the permanency plan continuing TK in long-term foster care or, alternatively, returning her to respondent's home. We disagree. A trial court's factual findings are reviewed for clear error and its decision to appoint a guardian is reviewed for an abuse of discretion. See *In re COH*, 495 Mich 184; 848 NW2d 107 (2014).

At the time of the July 2012 permanency planning hearing, TK was 14 years old and thriving in the foster home. Three experts opined that a guardianship would be in the child's best interests. At that time, TK had requested not to have contact with respondent and a guardian could decide if visitation would be appropriate in the future.

In the nine months between the July 2012 decision to change the permanency plan to one that sought a guardianship and the April 2013 order for a guardianship, little changed. TK continued to do very well in the foster home, but she still reported that she did not

want to see respondent, even in a therapeutic setting, because she was not "ready."

The trial court also had the benefit of the opinion of the clinician who performed a psychological evaluation on respondent on July 18, 2012. The clinician noted that respondent lacked the ability to identify her children's needs and lacked the stability that her children required. More importantly, the clinician noted that given the myriad services provided in the past, it was unlikely that respondent would make significant gains in the future. On the basis of this assessment, the clinician concluded that in light of the existing bond, a long-term permanent placement that could allow respondent to maintain contact with her children would be beneficial.

In light of TK's wishes and the clinician's assessment that respondent was unlikely to make significant gains, it was not clear error to conclude that returning TK to respondent's care or adopting long-term foster care were not dispositions in TK's best interests. Moreover, the appointment of a guardian would allow TK the "certainty" that the therapist indicated was necessary for the child's well-being, but still leave open the possibility for respondent to have contact with her daughter. This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The trial court did not abuse its discretion by appointing a guardian for TK.

IV

Respondent also argues that the trial court clearly erred when it concluded that reasonable efforts had been made toward reunification. We disagree. In gen-

eral, petitioner must make reasonable efforts to rectify conditions and reunify families. *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008).

The record establishes that respondent was provided with a multitude of intensive services. Although respondent had cooperated, she had made little progress. She lacked insight into the needs of her children and had not internalized what she had been taught. Not only must respondent cooperate and participate in the services, she must benefit from them. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Contrary to respondent's claim, the fact that she was denied contact with TK in an unsupervised setting did not prove a failure to make reasonable efforts. Respondent was originally granted supervised parenting time with TK, but respondent's actions during visitation made the child uncomfortable and the trial court was told that respondent impeded the therapeutic process. The foster-care worker and TK's therapist agreed that visitation was not recommended. Although respondent may have desired to have unsupervised contact with TK, the evidence establishes that it would not have been beneficial to TK's recovery.

Respondent also claims that TK should have been treated the same as her siblings, who were periodically returned to respondent's home and allowed visitation. But the record demonstrates that respondent never progressed to the point where she could safely parent more than one child at a time. In any event, TK and her brothers were not similarly situated. The trial court was obligated to consider each child individually and assess the best interests of the children separately. *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012).

We conclude that the trial court did not clearly err when it found that reasonable efforts had been made toward reunification. Contact with respondent was not reasonable under the circumstances.

V

Finally, respondent attempts to raise an issue apparently related to the statutory authority granted to guardians of juveniles. Respondent has devoted approximately one page to this argument. In her discussion, she simply cites several of the statutory provisions that govern the rights and duties of a juvenile's guardian and abruptly concludes that nothing in the law specifically addresses a pretermination juvenile guardianship. Respondent has failed to coherently present and discuss any perceived error. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position." *Mitchell v Mitchell*, 296 Mich App 513, 524; 823 NW2d 153 (2012) (quotation marks and citation omitted). We, therefore, decline to address this issue.

Affirmed.

SAAD and K. F. KELLY, JJ., concurred with WILDER, P.J.