*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re T. M. FRANKLIN, Minor.

UNPUBLISHED
January 11, 2024

No. 364463
Calhoun Circuit Court
Family Division
LC No. 2017-002918-NA

Before: HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her son, TMF, under MCL 712A.19b(3)(c)(*i*) and (j). We affirm.

## I. FACTUAL & PROCEDURAL BACKGROUND

As reflected in respondent's plea at the adjudication in January 2021, her parental rights to her first five children were voluntarily terminated in two earlier child protective proceedings, and three of those children were born positive to cocaine and opiates. TMF was born in November 2020. Respondent gave birth to TMF in a house in Indiana without seeking any medical attention for herself or TMF. Respondent did not report TMF's birth to a medical provider. Respondent tested positive for opiates in August 2020 when she was pregnant with TMF; and in another drug screen in December 2020, she tested positive for THC, cocaine, and opiates. The trial court accepted respondent's plea, listed her barriers to reunification as housing, employment, and substance abuse; continued TMF's placement in a licensed foster home, gave respondent supervised parenting time, and admitted into the record the initial case service plan and a parent-agency treatment plan for respondent. The case service plan included a 2018 psychological evaluation from one of the previous child protective proceedings, which indicated that respondent had been diagnosed with opiate-use disorder, stimulant-use disorder, cannabis-use disorder, personality disorder, and adjustment disorder. Under her treatment plan, respondent was to refrain from any drug use and had to complete all scheduled drug screens. She was informed that a missed drug screen would be considered a positive screen.

Over the next 22 months, regular permanency planning and dispositional review hearings were conducted. Respondent underwent, with comparable results, another psychological evaluation in 2021 by the same doctor who evaluated her 2018. In February 2022, on petitioner's

-1-

recommendation, TMF was returned to respondent's care by the trial court because she had been compliant with and benefiting from services. In a May 2022 review hearing, it was noted that respondent was living with a boyfriend who had a history of substance abuse and who had recently tested positive for cocaine use. He was willing to participate in services. A caseworker testified that respondent had participated in 10 drug screens in the last reporting period, that the first screen in March was positive for cocaine and THC, and that the last few drug screens were positive only for THC. The trial court allowed TMF to remain with respondent, noting that a reunification services group was in the home assisting respondent and her boyfriend in maintaining sobriety.

In a July 2022 review hearing, after TMF had been removed from respondent's care because she again tested positive for cocaine, there was evidence that respondent's boyfriend tested positive for cocaine in April 2022, that he again tested positive for cocaine in June 2022, and that thereafter he stopped engaging in services. There was also evidence that respondent had tested positive for cocaine in March 2022, that she again tested positive for cocaine in July 2022, that respondent denied any drug use, and that she and her boyfriend continued to live together. Respondent's attorney argued that respondent had a pending hair-follicle test that she believed would be negative for cocaine. Nevertheless, the trial court found that removal of TMF was proper, and it placed the child with his step-grandmother, with respondent being given supervised parenting time. At a review hearing in late July 2022, the trial court was informed that respondent's hair-follicle test was negative; however, the caseworker told the court that the drug-test company that performed the hair-follicle test indicated that its tests would not detect low doses of drugs that would otherwise be detected in the saliva-swab tests that were part of respondent's drug screens.

At a review hearing in August 2022, the caseworker testified that respondent had refused to participate in six scheduled drug screens and had stopped communicating with the caseworker. It was also noted that respondent had regularly tested positive for THC, yet she denied any drug use and blamed the positive THC results on secondhand smoke. In a September 2022 review hearing, the caseworker testified that respondent had still not completed any more drug screens, although the court had ordered more screens at the last hearing, and that respondent told the caseworker that she wanted nothing more to do with petitioner. Respondent testified that she had not used any drugs since November 2020 despite the positive screens, that she had overcome her drug addiction, that she stopped communicating with her caseworker and stopped doing drug screens because she felt she was not being treated with respect, and that her boyfriend had stopped using cocaine. The trial court changed the goal from reunification to adoption, noting that even if respondent had clean drug screens, her refusal to leave her boyfriend sufficed for termination. The court also rejected her excuses for not participating in drug screens as ordered and for not communicating with the caseworker. The trial court further noted that it did not know whether the hair-follicle test was accurate or not, but it made no difference.

In November 2022, a termination hearing was conducted, and at the beginning of the hearing petitioner requested that the trial court take judicial notice of the petitions in respondent's previous termination proceedings. The court observed that the petitions were already part of the case file, but it would formally take judicial notice of the prior proceedings. Respondent did not object. The trial court heard testimony from the caseworker, several witnesses who had provided various support services to respondent and her boyfriend—most of whom were completely unaware of the positive drug screens—and finally from respondent herself. The trial court made

its ruling from the bench. The court first noted that it had taken judicial notice of the previous child protective proceedings involving respondent. The trial court then recounted the numerous services that respondent had received with respect to the instant petition, concluding that petitioner had made reasonable efforts at reunification. The court next traced the history of the proceedings, outlined above, starting from the initial disposition and adjudication in January 2021. The trial court noted that respondent had a drunk-driving arrest in April 2022, which she had not disclosed to service providers.[1]

The trial court additionally found that respondent had not complied with safety plans that were put in place relative to drug use by her boyfriend and that she refused to separate from him, knowingly exposing TMF to the boyfriend. The court also noted that respondent failed to make follow-up appointments with a provider of behavioral services, which she was told to do in August 2022. The trial court then addressed the 2018 and 2021 psychological evaluations, which revealed, in part, respondent's continuing substance abuse history that had worsened by 2021 under an abuse scale employed in the evaluations. The court further found that respondent had a history of lying about her substance abuse to her service providers, that instead of seeking help in 2022 when she was testing positive for cocaine and THC, she lied to persons in her support system, and that she then refused to participate in drug screens. The trial court determined that respondent had only exercised half of the visitations that she was granted. The court concluded that respondent had unresolved mental-health and substance-abuse issues and remained in a relationship with her boyfriend, which in and of itself was problematic even if respondent had not tested positive for drugs.

Based on these findings, the trial court determined that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*) and (j). The court next ruled that, while there was a bond between TMF and respondent, termination of respondent's parental rights was in TMF's best interests. The court reasoned that the child needed stability and permanency in his formative years, which ruled out a guardianship, that TMF could not wait for respondent to get sober, that respondent had already had five years of services without success, and that there was no evidence that respondent would overcome her barriers within a reasonable amount of time.

## II. ANALYSIS

On appeal, respondent first argues that the trial court violated her due-process rights by referring to facts from the earlier child protective proceedings because those facts did not lead to the current adjudication or have anything to do with whether current conditions continued to exist. She relies exclusively on the language of MCL 712A.19b(3)(c)(*i*), which provides for termination when there is clear and convincing evidence that "[t]he conditions *that led to the adjudication continue to exist* and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." This argument lacks merit. On this unpreserved issue, we conclude that the trial court did not commit plain error by taking judicial notice of the

---

[1] Respondent testified that police officers found her after she had gone out drinking and fell asleep behind the wheel while parked in an oncoming lane of traffic.

documents from the earlier proceedings, nor did respondent incur any prejudice.[2] In termination proceedings, "a court may take judicial notice of its own files and records[.]" *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). Moreover, as reflected in our discussion above, substance abuse—and the neglect that flowed from it—was the primary condition that led to adjudication, and the trial court, in terminating respondent's parental rights, relied heavily on respondent's substance abuse, as well as her boyfriend's substance abuse, that occurred *following adjudication in this case*. Additionally, MCL 712A.19b(3)(c)(*i*) required the trial court to assess whether there was a reasonable likelihood that the substance abuse problem would be rectified within a reasonable time, and certainly respondent's abuse of substances that drove the earlier termination proceedings was especially relevant to evaluating that issue. Reversal is unwarranted.

The final two arguments raised on appeal by respondent concern the statutory grounds for termination and the best-interest determination. In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework with respect to termination proceedings:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

Respondent argues that the evidence did not support termination of respondent's parental rights under MCL 712A.19b(3)(j), which provides for termination when there is clear and convincing evidence of "a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Respondent contends that the only evidence that could have supported termination under this provision was respondent's July 2022 drug screen that was positive for cocaine. And respondent maintains that the hair-follicle test demonstrated that she had not been using cocaine and that the caseworker's testimony about the saliva-swab test versus the hair-follicle test was improper as she was not an expert on the matter, nor did she even identify with whom she had purportedly spoken at the

---

[2] This Court reviews de novo whether a trial court violated the constitutional rights of a parent. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). But unpreserved claims of constitutional error in termination proceedings are reviewed for plain error affecting substantial rights, i.e., error that is prejudicial. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). We note that respondent's argument is more accurately framed as simply a claim of evidentiary error.

company that performed the hair-follicle test. Respondent also points to her testimony that she was prepared to leave her boyfriend in order to reunify with her child.

This argument lacks merit because it ignores the positive THC screens, the positive cocaine screen in March 2022, the skipped drug screens after July 2022, which were considered positive drug screens, respondent's drunk-driving arrest, the positive drug screens by respondent's boyfriend, and respondent's failure to abide by her safety plan when she stayed with her boyfriend despite his continuing drug use; all of which support the trial court decision. These facts all played a role in the trial court's ruling, and they supported the determination that there was a reasonable likelihood that TMF would be harmed if returned to respondent's home.[3] The trial court expressly stated that removal and termination were warranted even had respondent provided negative drug screens because she continued to expose TMF to her substance-abusing boyfriend. The court did not state that it was rejecting the results of the hair-follicle test. Furthermore, respondent herself did not call an expert to support consideration of the hair-follicle test. Finally, the trial court clearly did not find respondent to be credible, pointing out her constant lying, and we defer to the court's assessment of her credibility relative to her claim that she was now ready to leave her boyfriend. See *In re Mota*, 334 Mich App at 320. Reversal is unwarranted.

Lastly, respondent argues that the trial court's finding that termination of her parental rights was in TMF's best interests was based on demonstrably false evidence. Respondent notes that the child was placed with his maternal grandfather and his wife, and respondent contends that the caseworker testified that they were a preadoptive home even though they actually had no interest in adopting TMF, as reflected in the case service plan. Thus, there would be no future stability with the child's grandfather and his wife. Respondent also maintains that the court failed to mention her visits with TMF after he was removed the second time, during which visits the child was extremely happy and begged his mother not to leave. Respondent additionally claims that the caseworker shattered TMF's stability with respondent by her improper testimony regarding the July 2022 positive cocaine screen and the hair-follicle test.

In *In re Mota*, 334 Mich App at 321, this Court discussed the best-interest analysis, stating as follows:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could

---

[3] We note that MCL 712A.19b(3)(j) encompasses both physical and emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

"A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350. 361; 948 NW2d 131 (2019).

In this case, the trial court recognized the bond between respondent and TMF, and it did not place substantial reliance on an adoption plan. Rather, the trial court emphasized that TMF needed permanence, stability, and finality, which respondent could not provide to him given her chronic substance abuse. This reasoning was sound. Also, respondent's repeated and misplaced reliance on the July 2022 drug tests lends no support for her position. In sum, we cannot conclude that the trial court clearly erred by finding that termination of respondent's parental rights was in TMF's best interests.

Affirmed.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado