*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J.D. ELLIOTT-BOYD, Minor.

UNPUBLISHED
September 19, 2025
11:24 AM

No. 374490
Macomb Circuit Court
Juvenile Division
LC No. 2022-000287-NA

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to the minor child, JEB, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist that could have led to adjudication), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood the child will be harmed if returned to the parent). We affirm.

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), removed JEB and his siblings from father's care in December 2022, after JEB's mother[1] was arrested for physically attacking father. DHHS filed a petition alleging that father and mother both suffered from untreated schizophrenia and bipolar disorder, and on multiple occasions, they reported to Child Protective Services ("CPS") they "are done caring for the children and to just take them." The petitioner indicated that CPS attempted to establish a safety plan for the children. Under the plan,

---

[1] JEB's mother was a respondent in these child protective proceedings and her parental rights to JEB were terminated at the same time as father's parental rights. JEB's mother has three other children: RW, BE, and NE, whom she does not share with father. Mother's parental rights to these children were also terminated. JEB's mother is not a party on appeal, nor does it appear that she has filed an appeal from any order entered by the trial court. We will only reference JEB's mother and JEB's siblings to provide context.

father was to remain out of the home while mother remained in the home with the children and father's parents. Families First was to be called in to work with mother. Father repeatedly violated the safety plan by returning to the home and getting in altercations with mother. The petition also indicated that JEB had not been to see a doctor for a well child visit, despite being born premature and suffering from seizures. The petition also stated that marijuana was found in the home in areas accessible to the children.

The trial court authorized the petition and found statutory grounds to exercise jurisdiction. Father was ordered to comply with a parent-agency treatment plan ("PATP"). As part of the PATP, father was ordered to complete and benefit from parenting skills classes, psychological and psychiatric evaluations, mental health services, and a domestic violence assessment. He was also required to attend all parenting time sessions, provide proof of income and suitable housing, and maintain contact with DHHS, among other things. Father's progress during the proceedings was limited. Father was diagnosed with cannabis dependency and was ordered to comply with drug screenings, but he refused to participate and continued to smoke marijuana. Father was additionally terminated from multiple services for noncompliance, was inconsistent with attending and participating in parenting time, and continued to engage in domestic altercations with mother, including during parenting time.

In May 2024, DHHS filed a supplemental petition for termination of father's parental rights. At the September 2024 termination hearing, father stipulated to the statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). At the best interests hearing, the trial court found termination father's parental rights was in JEB's best interests. This appeal followed.

## II. ANALYSIS

Father argues that the trial court erred in determining termination of his parental rights was in JEB's best interests. We disagree.

This Court reviews a trial court's best-interests determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (citation omitted).

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the child[]'s best interests." *In re White*, 303 Mich App at 713. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). As noted above, father stipulated to the existence of statutory grounds for termination. Thus, our analysis is limited to whether termination was in JEB's best interest. When determining best interests,

the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency,

stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Father argues that the trial court did not consider whether maintaining father's relationship with JEB would serve JEB's best interests, and asserts this should be the proper focus of the best-interests analysis. Relatedly, he contends that a guardianship would have allowed him to maintain this relationship with JEB, and that the trial court declined to consider guardianship as an option. A guardianship may be appropriate when "an ongoing relationship with [the parent]—rather than termination—is in the [child's] best interests." *In re Mason*, 486 Mich 142, 168-169; 782 NW2d 747 (2010). This Court neither favors nor disfavors guardianships. Whether guardianship is appropriate for a particular child is considered on its own individual merits. See *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014) (explaining that the facts of each case determine whether guardianship is appropriate); *In re Affleck/Kutzleb/Simpson*, 505 Mich 858, 858-859 (2019) (stating that a court's best-interests determination must be based on the child's specific circumstances, without regard to generalized policies disfavoring guardianships, especially for young children).

Here, the trial court found that JEB's foster family was not interested in a guardianship, although they indicated that they would be open to allowing father to maintain a relationship with JEB. No one was identified as potential guardianship placements for JEB. Additionally, the trial court opined that, even if a guardianship had been an available option, one would not be beneficial to JEB because father and mother "present[ed] a risk [to JEB], even in a supervised setting," given their ongoing domestic violence and substance abuse issues. Thus, the trial court properly considered alternatives to termination and found that a guardianship would not be in JEB's best interests.

As to whether termination was in JEB's best interests, the record indicated that, although father loved JEB, it was unclear if JEB was bonded to father. Even if they were bonded, the trial court observed that the bond was not healthy for JEB. At the time of termination, JEB had been in care for over two years. During that time, father failed to address his domestic violence and substance use issues, despite being offered extensive services. Father continued engaging in a volatile relationship with JEB's mother, even though domestic violence was the main reason for JEB's removal. Father engaged in multiple domestic altercations at parenting time. These altercations distressed JEB, causing him to demonstrate sporadic and aggressive behavior for long periods after parenting time, including crying and throwing toys and himself on the ground. Moreover, father's attendance at parenting time was sporadic. When he attended parenting time, he would not interact with JEB much, instead allowing JEB's mother to handle most of the engagement. Father also did not acknowledge the effect his relationship with JEB's mother had on JEB. Instead, he elected to continue his relationship with mother, despite another domestic violence investigation in May 2024. He likewise maintained a lackadaisical attitude toward having another child with her. Based on the foregoing, it is clear that any bond JEB maintained with father was not healthy for JEB, who needed permanency and stability that father could not provide.

As further found by the trial court, father did not provide a stable living situation for his current children and would be unable to provide stability and permanency for JEB. Father lacked commitment to completing services and failed to provide proof that he had obtained suitable employment or housing. He smoked marijuana throughout the proceedings and refused to quit or submit to drug screenings, despite the recommendations of his substance abuse assessment. Father did not properly store his marijuana to keep it out of JEB's reach. Because father failed to comply with or benefit from the services provided to him during the two-year proceeding, he lacked the ability to provide proper care to JEB. Meanwhile, JEB was thriving in his foster care placement and was bonded with his foster parents. The foster parents were interested in adopting JEB, who had been in their care since September 2023. For these reasons, the trial court did not clearly err by finding that the termination of father's parental rights was in JEB's best interests.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi

-4-