*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DURRAH, Minors.

UNPUBLISHED
December 17, 2025
9:34 AM

No. 374839
Wayne Circuit Court
Family Division
LC No. 2022-000671-NA

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Respondent appeals the order terminating her parental rights to her children, EAD and JDD, under MCL 712A.19b(3)(a)(*i*) (parent caused physical injury to child and reasonable likelihood of harm if returned to parent's care), (c)(*i*) (failure to rectify conditions that led to adjudication), (c)(*ii*) (failure to rectify other conditions), (g) (parent financially able to care for child but failed to do so), (j) (reasonable likelihood of harm), and (k)(*i*) (abandonment). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2022, when EAD was two months old, she arrived at the hospital with deep scratches on both sides of her eyes. At the hospital, the doctors discovered that EAD had a liver laceration, that was diagnosed as nonaccidental trauma. EAD and JDD were placed with their grandmother while Children's Protective Services (CPS) investigated respondent and their father.[1] They were later placed with their great-grandmother.

The Michigan Department of Health and Human Services (DHHS) subsequently petitioned to terminate respondent's parental rights at the initial disposition. Respondent entered a no-contest plea as to the legal basis for jurisdiction and termination, but contested whether it was in the best

---

[1] The parental rights of the children's father were also terminated during the lower court proceedings. But because the children's father is not a party to this appeal, we will only refer to the children's mother as respondent.

interests of her children to terminate her parental rights. The trial court determined that it was in EAD's and JDD's best interests to maintain respondent's parental rights. Accordingly, the trial court ordered respondent to participate in and benefit from a service plan, which included a parent-partner program, infant mental health services, parenting classes, individual counseling, a psychological evaluation, attendance at the children's medical appointments, and suitable income and housing.

Because respondent did not comply with her service plan, in December 2023, the trial court ordered DHHS to file a supplemental petition to terminate respondent's parental rights. Nearly a year later, at the termination hearing, the trial court found there were statutory grounds for termination as noted above, and that termination was in the children's best interests. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

## III. ANALYSIS

Respondent argues that termination of her parental rights was not in her children's best interests. We disagree.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted).

When determining best interests:

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

"Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that

-2-

termination is in the child's best interests." *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted).

A guardianship "allows the child to keep a relationship with the parent when placement with the parent is not possible." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). The appointment of a guardian is only appropriate after the court has made findings that (1) "the child cannot be safely returned to the home," (2) termination of parental rights is "clearly not in the child's best interests[,]" and (3) "it is in the child's best interests to appoint a guardian." *Id*. at 707. A trial court is not permitted to implement a blanket policy disfavoring guardianship, but instead "must make an individualized determination regarding a child's best interests." *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 6.

The record supports the trial court's finding that termination was in EAD's and JDD's best interests. EAD was hospitalized for poor weight gain, and was under the first percentile for weight. At the hospital, doctors discovered that EAD had a liver laceration from nonaccidental trauma and scratches on both sides of her face that did not match respondent's explanations. To rectify these conditions, the trial court ordered respondent to comply with her service plan. Respondent, however, failed to comply with or benefit from her service plan. She did not follow up on the recommendations from her psychological evaluation, failed to complete several court-ordered services, and sporadically attended parenting time visits.

Although there was evidence of a bond between respondent and her children, the children more often sought comfort from their caregivers—their grandmother and great-grandmother— instead of respondent during parenting visits. The trial court acknowledged this, stating that the relationship between the children and their caregivers more closely resembled a parental bond. This makes sense, given that the children had been in the care of their grandmother and great-grandmother almost their entire lives. The children were doing well in their great-grandmother's care, and EAD's failure-to-thrive condition had improved. Further, the children's great-grandmother expressed a willingness to adopt them. These facts demonstrate that termination was in the children's best interests.

Respondent contends that the trial court failed to adequately consider that the relative placement weighed against termination. But the trial court explicitly stated that the children's placement weighed against termination. Regardless, it found that this was nonetheless outweighed by respondent's failure to rectify the conditions that led to adjudication, as demonstrated by her failure to comply with her service plan and irregular visits with the children. Respondent also argues that the trial court did not consider if guardianship was a viable option. But the record belies this assertion. The trial court expressly determined that guardianship was not in the children's best interests, stating that "guardianship would do nothing but leave these children in the exact same position we have now." Because the record supports the trial court's findings, it did not clearly err in terminating respondent's parental rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

-3-