*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MALLETT/JOHNSON, Minors.

UNPUBLISHED
December 21, 2023

No. 366518
Saginaw Circuit Court
Family Division
LC No. 21-049621-NA

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to the minor children, CAAJ and ALM, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent). On appeal, respondent does not challenge whether the evidence supported the statutory grounds for termination or whether termination was in the children's best interests. Instead, respondent contends that her due-process rights were violated on multiple grounds. Discerning no error in the proceedings below with respect to the issues raised by respondent, we affirm.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 2021, the Department of Health and Human Services (DHHS) alleged that respondent had severe substance abuse and mental health issues that affected her parenting ability and that, on two occasions, respondent had repeatedly driven her car into fences and cars while she was highly intoxicated with the children in the backseat. DHHS requested that the trial court remove the children from respondent's care and custody and exercise jurisdiction. The petition was authorized, the children were removed from respondent's care, and respondent was granted supervised parenting time.

On April 19, 2021, a bench trial was conducted to determine whether the court could exercise jurisdiction over the children. At the beginning of the trial, respondent pleaded to jurisdiction pursuant to MCL 712A.2(b)(1) and (b)(2). Respondent admitted that she had a substance abuse problem that negatively impacted her parenting ability. The trial court exercised its jurisdiction, continued respondent's supervised parenting time, and ordered DHHS to engage in reasonable efforts toward reunification. DHHS created a case service plan, which the trial court adopted at the initial disposition hearing on June 4, 2021. Respondent was ordered to participate

in and benefit from substance abuse treatment, individual and group therapy, and parenting education. Respondent was also ordered to complete random drug screens, complete a psychological evaluation, and follow all recommendations from the psychological evaluation, including but not limited to attending substance abuse treatment at an inpatient facility.

Respondent's participation in the case service plan was poor. Though she had completed a psychological evaluation, she failed to consistently attend counseling sessions, and she was discharged from several mental health services for failing to attend and noncompliance. Respondent also completed substance abuse treatment at an inpatient facility in June 2021, but she failed to participate in the outpatient treatment program as she was required to do. Respondent also largely failed to complete her random drug screens, and when she did complete drug screens for her caseworkers, she tested positive for substances. Respondent did not consistently attend scheduled visitations with the children. Respondent was incarcerated several times throughout the case, and though she was referred to a specialty court to assist her with her mental health and substance abuse, respondent was subsequently dismissed for failing to attend her mandatory court hearings. DHHS struggled to communicate with respondent because she frequently failed to respond to text messages or answer phone calls from DHHS employees.

On October 7, 2022, DHHS filed a supplemental petition requesting that the trial court terminate respondent's parental rights to the children under MCL 712A.19b(3)(c)(*i*), (g) (failure to provide proper care and custody), and (j). A termination hearing was held on November 18, 2022. Respondent was present at the hearing and actively participated in it through the assistance of counsel by cross-examining witnesses and presenting her own testimony.

The caseworker testified that termination was in the children's best interests because, while the children and respondent had a bond, respondent had not participated in her services, and, as a result, there was still a concern that the children would be subjected to "continued ongoing neglect" and potential physical harm if returned to respondent. The caseworker stated that, because of respondent's lack of participation in the offered services, there was nothing to show that if the children returned home they would be provided with appropriate shelter, food, water, supervision, education, structure, and medical appointments. The caseworker also noted that, at the time of the termination hearing, CAAJ and ALM were four and three years of age, respectively, and they had spent half their lives in foster care. The caseworker testified that the children were thriving in their foster home, all of the children's needs were being met, and the children referred to their foster mother as "mom." After the close of proofs, the referee stated that he would take the matter "under advisement" and issue a written opinion containing his recommendations after he reviewed the entire record again.

By December 27, 2022, another review hearing was held, and the referee had not yet released a written opinion on his recommendations regarding termination. A temporary substitute referee presided over the hearing, and he acknowledged the original referee's absence:

> Before I move on to the exhibits, I'll identify for the record that on or about November 18th of 2022 a hearing on the supplemental petition to terminate parental rights was heard. [Referee Keuvelaar] took that under advisement. [Referee Keuvelaar] is not available, he has not been available since the Wednesday before Thanksgiving. I am not certain if he will be able to return. A recommendation has

-2-

not been completed regarding that petition and so at this time the court is going to proceed forward with purposes of the review today.

The parties proceeded with the review hearing, and the caseworker reported that respondent had still not made any progress with any of her services and that respondent was largely noncommunicative with DHHS. At the close of proofs, the referee again addressed the termination hearing and the progress of the case going forward:

> I am not the regular hearing officer responsible for this case. I did have a chance to review some of the information leading up to today as well as the exhibits entered in the hearing as well as listen to the testimony . . . . A hearing on a supplemental petition was held on November 18th of 2022. That was taken under advisement and a recommendation has not been presented to [the trial judge] for review and I do not know if there will be one. Based on the information presented today, I will indicate that [respondent] has not made any progress in her case service plan . . . .

> \* \* \*

> I understand that this is somewhat unusual for the court not to have resolved the hearing for termination of parental rights before this hearing today, I apologize to everyone on behalf of the court that that matter has not been resolved timely, however I don't think that it is appropriate to start and stop potential parenting time as that decision or another decision regarding that hearing the supplemental petition would be made at some point in the future . . . .

> As I indicated previously a hearing on the supplemental petition will have to be reevaluated. It may be that it is rescheduled or the referee may issue a recommendation in the meantime. I do not know fully what that will be but I'll keep evaluating it on behalf of this case . . . .

The referee informed the parties that the next review hearing was scheduled for 9:00 a.m. on March 7, 2023, and he reminded them that he was a referee and that his recommendations could be reviewed by the trial judge within seven days of the hearing if a party requested review.

As scheduled, another review hearing was held on March 7, 2023. Respondent failed to appear, but respondent's counsel appeared on respondent's behalf. A new substitute referee presided over the hearing, and he indicated at the start of the hearing that he had "taken over this case" from the original referee because he was no longer available. After conducting the review hearing, the parties addressed the change in referees, and the new referee asked the parties if they were willing to stipulate to his reviewing the prior record and making a decision based upon that information. None of the parties objected. Respondent's counsel stated:

> Since my client has made no contact with me [and] hasn't advised me of her address or her phone number where I can contact her I cannot consult with her and get her consent. As an attorney I can say that we all presented all the evidence that we had at that [termination hearing], that my client was present, that she was able to provide—to assist in her own defense in that [termination hearing] and I cannot see

-3-

any harm that would come to her case from allowing this referee to go back and review the entire record and issue a decision. I would appreciate it if the court would give her a period of time to respond in writing if she objects, but otherwise I can't see as counsel how this would be at all prejudicial to her case. So I would stipulate.

The new referee stated he would "offer a 14 day window for anyone to file an objection," and he indicated that he would review the record and the termination hearing so that he could make an informed decision about the termination of parental rights. The referee then reminded the parties that they had the right to have the trial judge review his findings if they requested the review within seven days. Each party was served with a copy of the March 7, 2023 order on March 28, 2023, and respondent was served by first-class mail. On April 13, 2023, the court issued an amended copy of the order to indicate that the parties had received verbal notice at the March 7, 2023 hearing that they had 14 days to object to the new substitute referee "reviewing the recordings of the termination [hearing] and issuing an order," and respondent was again served by first-class mail.

None of the parties ever objected to the new referee handling the case, and, on May 15, 2023, the referee issued a written opinion and recommended that the trial court terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (j) because DHHS had established those statutory grounds by clear and convincing evidence and termination was in the children's best interests. Relying on the referee's written opinion, the trial court terminated respondent's parental rights on May 15, 2023. This appeal followed.

## II. PROCEDURAL DUE PROCESS

Respondent argues that her due-process rights were violated because a substitute attorney referee who did not preside over the termination hearing recommended that her parental rights be terminated. Specifically, respondent asserts that she was provided inadequate notice that a substitute referee would be taking over her case and of her right to object to the substitute attorney presiding over the case.

Because respondent did not argue in the trial court that her due-process rights were violated, the issue is unpreserved. See *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). This Court reviews unpreserved claims of constitutional error arising out of child protective proceedings for plain error affecting substantial rights. *Id.*; *In re Pederson*, 331 Mich App 445, 462-463; 951 NW2d 704 (2020). The respondent bears the burden of persuasion and, to obtain appellate relief, must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). To satisfy the third element, the respondent must show that the error "affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Reversal is not warranted unless the plain error seriously affected the integrity, fairness, or public reputation of the judicial proceedings. *In re MOTA*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

"A natural parent has a fundamental liberty interest in the care, custody, and management of his [or her] child that is protected by the Fourteenth Amendment of the United States Constitution . . . and by article 1, § 17, of the Michigan Constitution[.]" *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.) (quotation marks and citations omitted).

"At its core, due process requires the opportunity to be heard at a meaningful time and in a meaningful manner." *In re BGP*, 320 Mich App 338, 343; 906 NW2d 228 (2017) (quotation marks, citation, and alteration omitted). "The opportunity to be heard includes the right to notice of that opportunity," and "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rood*, 483 Mich at 92 (quotation marks and citation omitted). Therefore, "a parent is entitled to procedural due process if the state seeks to terminate his [or her] parental rights," and "[t]he state must make reasonable efforts to notify [the parent] of the proceedings and allow him [or her] a meaningful opportunity to participate." *Id.* at 122.

Respondent primarily argues that her due-process rights were violated because the trial court did not adhere to the procedural requirements detailed in MCR 6.440(B) when substituting the new referee for the old one. MCR 6.440(B) is wholly inapplicable to this case. MCR 6.440 specifically governs criminal procedure, and child protective proceedings are not governed by the rule. See *Ferranti*, 501 Mich at 14 ("Child protective proceedings are governed by the juvenile code, MCL 712A.1 *et seq.*, and Subchapter 3.900 of the Michigan Court Rules."). Additionally, the proceedings that respondent principally complains of—the termination hearing and the March 7, 2023 review hearing—neither constituted a trial nor involved a judge. In a child protective proceeding, a "trial" is "the fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court" and "a specific adjudication of a parent's unfitness to determine whether the parent is subject to the dispositional authority of the court." MCR 3.903(A)(27). The termination hearing and the March 7, 2023 review hearing were therefore not "trials." See *id*. Moreover, referees in child protective proceedings are not judges. Referees are ordinarily individuals who are "licensed to practice law in Michigan," and the trial court is permitted to "assign a referee to conduct a preliminary inquiry," "preside at a hearing," and "make recommended findings and conclusions." MCR 3.913(A)(1), (2)(b). Referees may also "conduct the trial and further proceedings through disposition" absent a demand for a "trial by jury or by a judge pursuant to MCR 3.911 or [MCR] 3.912[.]" MCR 3.913(B); see also MCR 3.911(B); MCR 3.912(B). Given that the proceedings were not criminal, did not involve a trial, and did not involve a judge, MCR 6.440(B) is inapplicable to this case, and respondent's arguments relying on the statute as the basis for her due-process claims are without merit.

When removing the substance of respondent's argument from the cloak of MCR 6.440(B), respondent argues that her due-process rights were violated because she was not provided adequate notice that a substitute referee would be providing recommendations in her case or of her right to object to the substitute referee's handling of her case. This argument is without merit. Respondent was physically present at the December 27, 2022 hearing at which a temporary substitute referee had informed her that the original referee was unavailable and that he was uncertain if the original referee would ever be able to return or provide his recommendations regarding termination. The temporary substitute referee reiterated at the end of that hearing that he was "not the regular hearing officer responsible for this case" and that "a hearing on the supplemental petition [would] have to be reevaluated." Respondent was served with a copy of the order following that hearing via first-class mail, which indicated that the court would determine whether "the hearing on the supplemental petition [needed to] be rescheduled." Moreover, respondent was informed throughout the case by the presiding referee that she had the right at *every* proceeding to have a trial judge review a referee's "recommended findings and conclusions" if she requested review

-5-

within seven days of the hearing, including at the December 27, 2022 hearing, at which a substitute referee had informed her that he or another referee may have to replace the original referee going forward. See MCR 3.913(C)(1) and MCR 3.991(A)(1), (B). Respondent took no issue with the temporary substitute referee providing the trial court with his recommendations in lieu of the original referee, which is evidenced by the fact that she did not demand that his findings be reviewed by a trial judge despite being informed that she could do so. Therefore, it cannot be said that the state failed to comply with required procedures that deprived respondent of due process.

Further, this Court may examine whether a "respondent was sufficiently responsible for his [or her] own lack of participation" as to excuse a due-process violation. *Rood*, 483 Mich at 111-114. The crux of respondent's argument was not that she did not receive adequate notice of the March 7, 2023 hearing, but that she did not receive adequate notice of the substitute referee providing recommendations in her case going forward because she was not present at the March 7, 2023 hearing at which the subject was discussed. This argument is also without merit. It is well known by "[p]ractitioners in the field of child protective proceedings . . . that some parents do not always show up for hearings," but, "assuming proper notice was given, a parent's interests are protected by counsel." *In re Collier*, 314 Mich App 558, 570 n 5; 887 NW2d 431 (2016). Respondent was provided actual notice of the March 7, 2023 hearing when she was physically present at the December 27, 2022 hearing, and she was served via first-class mail a copy of the order following the December 27, 2022 hearing, which indicated that the next hearing was scheduled for March 7, 2023. Respondent's counsel was also provided with notice of the date of the March 7, 2023 hearing; service on a respondent's attorney is deemed sufficient notice after the respondent's first appearance in court, and the notice need not be served on respondent if his or her attorney received proper notice. See MCR 3.920(G); *In re BAD*, 264 Mich App 66, 70 n 2; 690 NW2d 287 (2004) (citing an older version of the court rule).

The record also reflects that respondent made herself wholly unavailable and ceased virtually all communication with DHHS employees and her own counsel for nearly all of the time that had passed between the December 27, 2022 and the March 7, 2023 hearings. Had respondent attended the March 2023 hearing that she was adequately notified of, she could have objected to the new referee providing recommendations. See *Rood*, 483 Mich at 111-114. Additionally, respondent's counsel was present at the March 2023 hearing, and respondent was served through first-class mail a copy of the order following the March 2023 hearing, thereby making her aware of the court's intention to substitute a new referee for the old one. See MCR 3.920(G); *BAD*, 264 Mich App at 70 n 2. The substitute referee left open a 14-day window for any of the parties to object to his review of the record, and more than two months had passed before the substitute ultimately made any recommendations. Respondent never raised any objections during that time. Accordingly, respondent's absence from the proceeding at which the substitute referee was discussed does not present a procedural due-process violation because her interests were adequately protected by counsel, see *Collier*, 314 Mich App at 570 n 5, and she received adequate notice of the hearing and was responsible for her own lack of participation, see *Rood*, 483 Mich at 111-114.

We conclude that respondent did not show any error, much less plain error, with respect to her due-process issues raised on appeal. However, even if respondent had shown plain error, we would alternatively conclude that she has failed to show prejudice. Respondent contends that "she would have objected" to the substitute referee making recommendations to the trial court "if given

the opportunity." However, procedural errors can be considered harmless if they do not affect the fundamental fairness of the proceedings or the outcome of the case. See *In re AMB*, 248 Mich App 144, 235; 640 NW2d 262 (2001); see also MCR 2.613(A). Given that the trial judge adopted all of the referees' recommendations throughout the case, including the substitute referee's termination recommendation, it is clear that the trial judge would not have reached a different result had respondent successfully objected to the substitute referee and had the trial judge personally presided over the case. See MCR 3.991(E) (stating that a trial judge must enter an order adopting a referee's recommendations unless (1) "the judge would have reached a different result had he or she heard the case" or (2) "the referee committed a clear error of law" that "likely would have affected the outcome" of the proceedings or "cannot otherwise be considered harmless").

Furthermore, respondent does not challenge the trial court's finding that there was sufficient evidence to terminate her parental rights and that it was in the best interests of the children to do so. Respondent was not arbitrarily deprived of her parental rights, and the March 2023 hearing itself was conducted with notice, a meaningful opportunity to be heard, and an impartial decision-maker. See *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014). Respondent was apprised of her right to challenge a referee's findings and conclusions had she ever wished to do so, but she never did. See MCR 3.913(C)(1); MCR 3.991.

Perhaps most importantly, the trial court conducted a termination hearing, and respondent was not only present at the termination hearing but *actively participated* in it. The substitute referee indicated that he would review the entire record and watch a recording of the termination hearing so that he could make "an informed decision" before providing his recommendations, and his written recommendations suggest that he did so. Being afforded a meaningful opportunity to present one's case is the gravamen of due process, see *BGP*, 320 Mich App at 343, and it is quite clear from the record that respondent was afforded that opportunity. Accordingly, respondent has failed to show that the replacement of the unavailable referee with a substitute referee affected the outcome of the proceedings. See *Utrera*, 281 Mich App at 9; see also *MOTA*, 334 Mich App at 318-319.

Affirmed.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Michael J. Kelly