*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* OLIVARES, Minors.

UNPUBLISHED
October 08, 2024
11:14 AM

No. 369308
Genesee Circuit Court
Family Division
LC No. 21-137541-NA

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to the minor children, MO and LO, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist), and (j) (reasonable likelihood that children will be harmed if returned to parent).[1] We affirm.

## I. FACTS AND PROCEEDINGS

This case arises from allegations of domestic violence perpetrated on respondent by the children's father. Petitioner sought removal of the father, who was MO's putative father at the time, from the home he shared with respondent, MO, and two of respondent's older children.[2] The trial court ordered removal of the father, placed MO and the older children in the care of respondent, and entered a no-contact order. After LO was born, she became part of the proceedings and was placed with respondent. The children remained with respondent for approximately a year before they were removed from respondent's care and placed with fictive kin[3] because of violations

---

[1] The children's father became a respondent during the later stages of the proceedings, and is not a party to this appeal.

[2] The two older children were eventually placed with their father, who is respondent's ex-husband, and they are not part of this appeal.

[3] The children were placed with the mother of respondent's ex-husband.

of the no-contact order, domestic violence, and a car accident in which LO was not in a car seat and was severely injured.

Respondent pleaded responsible to the allegation that domestic violence in front of the children has impacted her ability to effectively parent, and the trial court obtained jurisdiction over the children as to respondent. The trial court ordered respondent to obtain housing, maintain a legal source of income, complete a psychological evaluation and follow the recommendations, attend parenting classes, participate in domestic-violence classes, attend individual counseling, attend Easter Seals, participate in supportive visitation, and comply with the no-contact order. After respondent continued to violate the no-contact order, failed to sufficiently participate in or benefit from several court-ordered services, and developed a new substance-abuse issue, petitioner sought termination of respondent's parental rights in a supplemental petition. After a hearing on the supplemental petition for termination, the trial court terminated respondent's parental rights to the children under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), and found that termination was in the best interests of the children.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent contends that the trial court erred by finding clear and convincing evidence to support the statutory grounds for termination because there was no evidence of a future risk of harm or inability to rectify the conditions.

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (citations omitted).

The trial court terminated respondent's rights to the children pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), which provide that the court may terminate a parent's rights to a child if the court finds:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the

conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"[O]nly one statutory ground need be proved to support the termination of a parent's parental rights." *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015).

The trial court found that the condition that continued to exist under MCL 712A.19b(3)(c)(*i*) was domestic violence and the condition that existed under MCL 712A.18b(3)(c)(*ii*) was substance abuse. Respondent does not dispute that these conditions existed or that she was given recommendations to rectify the substance-abuse issue. Rather, she challenges the "forward-looking" component of each of these statutory grounds, arguing that there was a reasonable likelihood that the conditions would be rectified within a reasonable time because of the progress she had made. Similarly, she argues under MCL 712A.19b(3)(j) that there is no reasonable likelihood that the children will be harmed in the future because of her progress and because she is no longer in a relationship with the father.

Contrary to respondent's argument, the record supports the trial court's finding that she did not complete a "majority of her services." It is undisputed that respondent completed domestic-violence classes, and she testified that she also completed parenting classes and anger-management classes. Even if respondent completed parenting classes, Julie Burnette, the foster care specialist, testified that respondent started the parent partners program, but was discharged because of her failure to participate. With regard to anger-management classes, respondent was participating in those classes before her adjudication, but the court did not order respondent to participate in anger-management classes as part of its order of disposition.

In addition, Burnette testified that respondent did not maintain suitable housing, never provided verification of employment, and failed to participate in a psychological assessment, which were part of her service plan. The record also shows that she initially attended some parenting-time visits, but stopped attending visits in July 2023, and Burnett was unable to contact her when LO needed surgery to put tubes in her ears. Respondent also failed to comply with the no-contact order and there was evidence that she was living with the father at the time of the termination hearing. Respondent started individual therapy, but she failed to attend sessions. Respondent also failed to submit numerous court-ordered drug screens, and tested positive for marijuana and cocaine when she did submit drug screens. In fact, the record shows respondent missed all drug screens between July 2023 and December 2023. Although respondent testified that she had not used illegal substances in the two months before the termination hearing, there was no evidence to support this. Burnette had sent numerous letters to respondent about restarting services and respondent did not respond until approximately four weeks before the termination hearing. Respondent made three different appointments to meet with Burnette, but she failed to attend any of them.

Moreover, a respondent must not only "cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). Again, the evidence shows that respondent did not benefit from the services that she did complete. In particular, the evidence showed that she had not benefited from the domestic-violence classes because there was evidence that she was living with the father and continuing to stay in that abusive relationship.

Respondent maintains that there was no direct evidence that she had contact with the father in the months before the hearing and the trial court's finding was based on speculation and respondent's prior conduct alone. However, evidence showed that only a month before the termination hearing, respondent had a large, swollen black eye and she nodded yes when the police officer asked if her significant other had given her the black eye. The trial court found that respondent's testimony that it was actually her friend who had hit her was not credible, while the testimony of the officer was credible. "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App at 710.

Similarly, although Burnette had not seen respondent and the father together, she believed that respondent was living with the father because she saw (1) the father driving respondent's car, (2) respondent's belongings at the father's house, (3) respondent's car in the father's driveway, and (4) respondent's car at the father's place of employment. Although respondent provided explanations for her vehicle and belongings being at the father's home, the trial court did not appear to find those explanations credible because it found that she continued to engage in a relationship with the father. There were also police reports of respondent and the father being in the same vehicle. Considering this evidence, and deferring to the trial court's credibility determinations, the trial court did not clearly err by finding that respondent was still in a relationship with the father that involved domestic violence. Given respondent's lack of progress and failure to benefit from services, the trial court did not clearly err by finding under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*) that there was no reasonable likelihood that the conditions of domestic violence and substance abuse would be rectified within a reasonable time considering the children's ages.

Moreover, under MCL 712A.19b(3)(j), respondent's ongoing domestic-violence and substance-abuse issues, as well as her failure to comply with her treatment plan, demonstrate a reasonable likelihood of harm if the children are returned to respondent. See *In re White*, 303 Mich App at 710-711 (stating that "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home"). LO had, in fact, already been severely and permanently harmed in a car accident (while not in a car seat) that occurred while respondent was with the father in violation of the no-contact order. There was also evidence that one of respondent's older children had witnessed the father hit respondent with a beer bottle during the July 2021 incident. Thus, the record supports a finding that the children were also at risk of witnessing domestic violence and suffering emotional harm.

Finally, respondent argues that the trial court erred by terminating her parental rights on the basis of domestic-violence incidents in which she was the victim. Although "it would be impermissible for a parent's parental rights to be terminated solely because he or she was a victim of domestic violence," termination is proper when the respondent's "own behaviors were directly

harming the children or exposing them to harm." *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). In its decision, the trial court relied on respondent's own behavior in continuing to "engage in violent relationships" and the fact that the children had "already suffered a significant level of harm due to the choices that these parents have made." As in *In re Plump*, 294 Mich App at 273, respondent's own behavior in staying with the father placed the children at risk of physical and emotional harm. Respondent chose to live with the father despite multiple recommendations to go to a YWCA shelter, and despite the father's gang associations. Respondent also admitted that she was at least partly to blame for getting involved with the father and drugs. Thus, the evidence supports a conclusion that respondent's own behaviors placed the children at risk of harm and the trial court did not improperly rely on respondent being a victim of domestic violence.

## III. BEST INTERESTS

Respondent also contends that termination of her parental rights was not in the best interests of the children because of her strong bond with the children, parenting ability, and motivation, and, because the father is still participating in services, she should be given additional time to show that she is no longer in an abusive relationship.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713; see also MCL 712A.19b(5). This Court reviews "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App at 713.

"The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. The trial court "should consider a wide variety of factors," including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality," "the advantages of a foster home over the parent's home[,]" "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 713-714 (quotation marks and citations omitted). "A child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Atchley*, 341 Mich App at 347 (quotation marks and citations omitted). Finally, "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *In re White*, 303 Mich App at 715.

The trial court found that termination of respondent's parental rights was in the best interests of the children even though she and the children had a bond and a good relationship, she had appropriate parenting skills, and the children were placed with a relative. The trial court found this way because of the ongoing domestic violence, the unaddressed substance-abuse issues,

respondent's failure to reduce the barriers that brought the children into care, and the length of time the children were in care.

As discussed, the record shows that respondent had made little progress on her court-ordered services. Despite her claim to be "motivated to strengthen the bond" with the children, respondent had stopped visiting the children and participating in services in the months before the termination hearing. She also failed to benefit from the services she did complete, and the children were doing well in their placement. Further, although respondent was a victim of domestic violence, her choices placed herself and the children at risk of harm, and the conditions of domestic violence and substance abuse had not been rectified. Although respondent testified that termination would be unfair and there was "more to it," the focus is on the children.

Similarly, although the father was just starting services, which meant the children could not yet be adopted, the trial court did not clearly err by finding that it was not in the children's best interests to give respondent additional time. As the trial court found, MO had been under the court's supervision for nearly 2½ years and LO since near the time of her birth, and they had been placed outside of respondent's home since July 2022. And, Burnette testified that the children deserved permanency, had significant needs, and respondent had stopped visiting. For the reasons previously discussed, it was not clearly erroneous for the court to find that respondent would not rectify the domestic-violence and substance-abuse issues within a reasonable time. The trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of the children.

Affirmed.

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica