*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SKRZYSINSKI/HUGO/FACUNDO, Minors.

UNPUBLISHED
December 23, 2024
9:08 AM

No. 371120
Bay Circuit Court
Family Division
LC No. 23-013527-NA

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights[1] to his three children, RS, RH, and IF, pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical or sexual abuse to child or sibling), MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to parent), and MCL 712A.19b(3)(g) (failure to provide proper care and custody). Respondent's rights to IF were also terminated pursuant to MCL 712A.19b(3)(k)(*ii*) (parent abused child or sibling and abuse included criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate). We affirm.

## I. BACKGROUND

This case arises from sexual abuse that respondent perpetrated against his daughter and his son's half-sister. RS is respondent's daughter, RH is respondent's son, and IF is also respondent's son. RH and IF are approximately 8 and 10 years younger than RS, respectively. BP is IF's older sister, but she is not related to respondent. While there is no evidence of abuse perpetrated against RH and IF, respondent sexually abused RS and BP.

Regarding RS, respondent began showing her pornography when she was very young. Respondent regularly made RS uncomfortable with the most severe incident occurring when she

---

[1] Respondent previously appealed the court's removal order, and this Court affirmed. *In re Skrzysinski/Hugo/Facundo Minors*, unpublished per curiam opinion of the Court of Appeals, issued November 21, 2023 (Docket No. 365809).

was approximately 12 years old. RS was playing hide and seek with respondent and another child at the home respondent shared with his then-wife. Respondent took RS down to the basement. Respondent then began touching RS's legs and inner thighs, suggesting that they could go further. RS described a later incident in which a fight with responded culminated in him putting his hands on her neck. RS did not make any disclosures until several years later due to fear of retribution. RS also described a pattern of violent outbursts involving property destruction and pushing. RS eventually stopped visiting respondent and did want to have a relationship with him moving forward.

BP was also sexually abused by respondent. During the first incident, BP was alone in a car with respondent when she was 13 years old. Respondent was smoking methamphetamine in BP's presence and attempting to convince her to smoke as well while touching her thigh and repeatedly asking her to accompany him to a motel. The most severe incident occurred when BP was 14 years old. BP was with friends and her siblings swimming at respondent's home, which he shared with his mother, when respondent lured BP into a room where he could be alone with her. He then forcibly removed her clothes and perpetrated a sexual assault involving penile penetration of her vagina. Respondent threatened to do the same thing to IF as well as BP's sister, ASF, if she told anybody.

At the adjudication trial, respondent's defense was essentially that the girls and their mothers were conspiring against him to sabotage his relationship with his children and that the allegations of abuse were fabricated. Respondent's mother, ex-wife, and ex-girlfriend each testified that they believed the girls were lying. Respondent's mother testified that there was no point during the pool party at which BP was assaulted when respondent could have been alone with her. Respondent likewise testified that the girls were lying, and he denied having ever abused them. The trial court found the girls credible, and accordingly, it terminated respondent's parental rights.

## II. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding that petitioner established statutory grounds for termination of parental rights by clear and convincing evidence. We disagree.

To terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the enumerated statutory grounds has been established. MCL 712A.19b(3). This Court reviews for clear error a trial court's finding "that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (quotation marks and citations omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks, citation, and alteration omitted).

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Accordingly, we will focus our discussion on MCL 712A.19b(3)(j), which we believe most clearly

supports termination with respect to all three children. This provision allows termination of parental rights upon a finding that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." The trial court did not err by finding that respondent's sexual abuse of RS and BP, his history of drug abuse, and his propensity for violent outbursts created a reasonable likelihood that all three children would be harmed if returned to respondent.

Respondent's primary stance on appeal is that the trial court clearly erred by believing RS's and BP's allegations of sexual abuse. This argument is without merit. The girls both testified openly, unambiguously, and unequivocally about the abuse to which respondent subjected them. "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014). The court found the girls credible, and respondent has presented us with nothing that overcomes the deference owed to this finding. Respondent emphasizes the delays in disclosure, but this argument was refuted by expert testimony regarding the behavior of child sexual abuse victims. Further, RS and BP both testified clearly, while respondent's testimony was evasive, tangential, and bordering on chaotic.

Respondent takes exception to the trial court's application of the doctrine of anticipatory neglect. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Respondent accurately points out that there is no evidence he ever physically harmed RH or IF. However, the doctrine "inherently acknowledges that no actual detrimental act has occurred" to the child at issue. *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021). The probative value of anticipatory neglect is reduced by differences between the children. *In re Kellogg*, 331 Mich App 249, 259-260; 952 NW2d 544 (2020). However, not all differences between children are relevant, and the relevant differences do not automatically negate the doctrine. See *In re Mota*, 334 Mich App at 323 (stating that "abuse is abuse"). The trial court acknowledged that RH and IF are boys, but it did not find this difference to outweigh the other circumstances. First, respondent threatened to sexually assault IF when he was assaulting BP. Second, RH and IF are now similarly aged to RS and BP at the time respondent abused them. Third, respondent has refused to accept any responsibility for his actions and instead insisted that his accusers were lying. Fourth, respondent's primary source of support is his mother, and she demonstrated a propensity for enabling and avoidance. Fifth, RS testified that she believed respondent posed a danger to any children. Finally, these differences are not germane to the facts that respondent offered to give BP methamphetamine and has a history of domestic violence; both facts also suggest a risk of harm if any children are returned to respondent.

In conclusion, the court did not clearly err by finding by clear and convincing evidence that there was a reasonable risk RS, RH, and IF would be harmed if returned to respondent.

## III. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding termination of parental rights was in the best interests of RS, RH, and IF. We disagree.

This Court reviews a trial court's finding that termination is in the child's best interests for clear error. *Olive/Metts*, 297 Mich App at 40. "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks, citation, and alteration omitted).

If the trial court finds that a statutory ground for termination of parental rights has been established, it must order termination of parental rights only if it finds that doing so is in the best interests of the child. MCL 712A.19b(5); *Olive/Metts*, 297 Mich App at 40. In making this finding, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home of the parent's home." *Id*. at 41-42. (citations omitted). As noted, the trial court did not err by finding all of RS's and BP's allegations of abuse to be credible; these allegations overwhelmingly established that termination was in the best interests of the children because they would not be safe with him. Regarding bonds, RS testified that she did not want to have a relationship with respondent. The court acknowledged that there was a bond between respondent and the boys. However, the evidence supports the court's finding respondent's bond with the boys had diminished and that it was outweighed by respondent's "extreme reckless disregard for" their "well-being." There was also evidence that respondent did not provide much support for the children and that his mother did the bulk of the childrearing.

In conclusion, the trial court did not clearly err by finding that termination of parental rights was in the best interests of RS, RH, and IF.

Affirmed.

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace