*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision
until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C.J. TAYLOR, Minor.

UNPUBLISHED
August 07, 2025
3:23 PM

No. 372214
Oakland Circuit Court
Juvenile Division
LC No. 22-885189-NA

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her minor child, CJT, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); MCL 712A.19b(3)(g) (failure to provide proper care or custody); MCL 712A.19b(3)(i) (previous termination due to serious and chronic neglect or abuse); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

CJT was born in the fall of 2022. At birth, CJT tested positive for "cocaine, codeine, dihydrocodeine," and other drugs. In early November 2022, petitioner requested that the trial court assume jurisdiction over CJT pursuant to MCL 712A.2(b)(1) and (2).[1] After a preliminary hearing, the trial court placed CJT in petitioner's custody and allowed respondent supervised parenting time. The trial court also ruled that reasonable efforts were required to reunify the family. CJT began living with his great aunt, A. Taylor ("Taylor").

Petitioner's initial case-service plan, filed in December 2022, set a permanency goal of reunification with respondent. At the adjudication phase of this matter, respondent pleaded no contest to the allegations in the petition concerning jurisdiction. As part of her treatment plan, which she signed,

---

[1] Respondent's parental rights to four other children previously had been terminated because of ongoing substance abuse issues.

-1-

she agreed to participate in random drug screenings, individual therapy sessions, parenting classes, and a home assessment. She also agreed to consistently communicate with petitioner's caseworkers.

Petitioner submitted numerous court reports, which showed that respondent made little to no progress on her treatment plan. Respondent did complete parenting classes, as well as some therapy sessions. However, she missed nearly all of her random drug screenings, and tested positive multiple times for cocaine and other drugs. She failed to contact her caseworkers for weeks at a time, and did not notify them when she frequently changed her phone number. Also, caseworkers were unable to complete a home assessment or verify respondent's income. Finally, respondent did not attend many weekly parenting sessions.

CJT developed normally for his age and had no medical concerns during his placement with Taylor. According to petitioner's caseworker, CJT was "pretty attached" to Taylor, and her home was "very appropriate" for him. CJT was happy to see respondent when she did attend parenting time, but they did not interact much during her visits.

Petitioner filed a supplemental petition requesting that the trial court terminate respondent's parental rights. On February 16, 2024, petitioner filed numerous updated service and treatment plans, which it prepared in June, August, and November 2023. Respondent moved to dismiss the supplemental petition, arguing that petitioner did not comply with its statutory obligation under MCL 712A.18f(5) to provide updated case-service plans every 90 days. The trial court denied respondent's motion after a referee concluded that "[respondent] cannot use not contacting the Department as a shield for her noncompliance with the case service plan."

As noted, the trial court found several statutory grounds for termination. Moreover, the referee concluded, based on respondent's "lack of progress pertaining to the . . . treatment plan" and the best-interests factors, that termination of respondent's parental rights was in CJT's best interests. The trial court thus terminated respondent's parental rights to CJT. Respondent now appeals.

## II. REASONABLE EFFORTS

Respondent argues that petitioner did not make reasonable efforts toward reunification because petitioner did not provide updated case-service plans in a timely manner as required by statute. In other words, while respondent does not challenge the reunification efforts themselves, she argues that the failure to timely provide updated case-service plans requires reversal of the termination order. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

The parties initially dispute whether respondent preserved her challenge to petitioner's reasonable efforts toward reunification. Respondent argues that she preserved this issue by filing her motion to dismiss the supplemental petition on February 27, 2024.[2] Respondent also objected to the lack of updated case-service plans at the supplemental petition hearing on February 16, 2024. Petitioner, on the other

---

[2] Respondent's motion resembled a motion for summary disposition. However, summary disposition under MCR 2.116 is not available in child-protective proceedings. *In re PAP*, 247 Mich App 148, 153-154; 640 NW2d 880 (2001).

hand, asserts that because respondent did not object to the lack of updated case-service plans when they should have been filed, this issue is unpreserved.

We recently stated, in a case involving DHHS's failure to provide written case-service plans, that "to preserve an argument about reasonable efforts for family reunification, a respondent-parent must object to the services at the time they are offered . . . ." *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2 (footnote omitted), citing *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). In the matter before us now, respondent did not object to the lack of an updated plan until the supplemental petition hearing on February 16, 2024, notwithstanding that MCL 712A.18f(5) requires updated plans every 90 days. Because respondent did not object when petitioner's statutory violation occurred, i.e., when the first 90-day deadline passed, this issue is unpreserved under *In re MJC*. In other words, respondent's untimely objection to the failure to provide an updated plan renders this issue unpreserved.[3]

This Court reviews unpreserved issues in a child-protective proceeding for plain error. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted). We review the trial court's interpretation of statutes and court rules de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

## B. ANALYSIS

To terminate parental rights, a trial court must find, by clear and convincing evidence, one of the following grounds for termination under MCL 712A.19b(3):

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . :

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although . . . financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

---

[3] In any event, for the reasons explained in footnote eight, *infra*, even if we concluded that this issue is preserved, respondent still would not be entitled to relief.

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect . . . , and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

Moreover, before a trial court terminates a parent's parental rights, "[r]easonable efforts to reunify the child and family must be made[,]" except when certain aggravating circumstances apply.[4] MCL 712A.19a(2). As part of these reasonable efforts, DHHS "shall prepare a case service plan[5] that shall be available to the court and all the parties to the proceeding." MCL 712A.18f(2) (footnote added). A case-service plan includes "a schedule of services to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement." *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010) (cleaned up). Further, as DHHS "must make reasonable efforts to rectify conditions and reunify families," a parent has an equal responsibility to participate in, and benefit from, the services DHHS provides to achieve reunification. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

"If a child continues in placement outside of the child's home, the case service plan shall be updated and revised at 90-day intervals . . . ." MCL 712A.18f(5). DHHS must make these updated case-service plans "available to the court and all the parties to the proceeding." *Id*. Respondent argues that because petitioner did not file updated case-service plans in a timely manner, this Court should reverse the order terminating her parental rights.[6]

We agree with respondent that the first two criteria of the plain-error analysis have been met. See *In re Sanborn*, 337 Mich App at 258. Petitioner filed its initial case-service plan in December 2022. The referee adopted petitioner's proposed plan in January 2023. MCL 712A.18f(5) then required petitioner to

---

[4] Petitioner suggests on appeal, as an alternative basis for affirmance, that reasonable efforts toward reunification were not required because respondent did not rectify the conditions that led to her earlier terminations of parental rights. In its petition, however, petitioner did not request the trial court terminate respondent's parental rights to CJT at the initial disposition. Further, petitioner did not challenge below the trial court's finding reasonable efforts were required. "This Court ordinarily will not consider issues raised for the first time on appeal." *In re RFF*, 242 Mich App 188, 204; 617 NW2d 745 (2000). Because petitioner failed to assert in the trial court that reasonable efforts were not required, we decline to address petitioner's alternative argument on appeal.

[5] DHHS may also refer to a case-service plan as a "parent/agency treatment plan." MCL 712A.13a(d).

[6] We note that MCL 712A.18f(5), by its plain terms, does not require the "filing" of an updated case-service plan. Rather, it requires that the updated plans "be available to the court and all the parties to the proceeding." For the purposes of this appeal, we treat those terms as interchangeable. In other words, we assume that the failure to file an updated plan means that the updated plan was not available to the court and the parties.

-4-

update its plan every 90 days. Yet, petitioner did not file another service or treatment plan until mid-February 2024, when it filed three service plans, dated in June, August, and November 2023, respectively, and three treatment plans with the same dates. Thus, given the time of filing, petitioner did not make these plans available to the trial court at the time they were prepared. Further, even if petitioner had filed these plans when they were prepared, the earliest case-service plan still would fall outside the 90-day statutory deadline. In *In re MJC*, ___ Mich App at ___; slip op at 8, this Court held that "[t]he failure to provide and regularly update a case service plan for a child protective proceeding in which a minor child was separated from a parent is a clear and obvious error." So too here in the matter now before us.[7]

However, respondent's challenge ultimately fails because she did not demonstrate that the failure to provide updated case-service plans affected her substantial rights. A clear and obvious error affects substantial rights if it resulted in prejudice affecting the outcome in the trial court. *In re Sanborn*, 337 Mich App at 258. In *In re MJC*, ___ Mich App at ___; slip op at 8, we held that DHHS's failure to provide and update a case-service plan did not affect the respondent's substantial rights. We reasoned that because the "respondent-father was chronically noncompliant wholly failed to benefit from the services offered[,]" he did not establish that "he would have successfully attained reunification if a proper case service plan had been prepared and regularly updated." *Id*.

Similarly, now, respondent here does not show that she benefited from, or substantially complied with, the services petitioner provided. In the initial case-service plan, petitioner agreed to refer respondent for individual therapy, substance abuse treatment, drug screens, and housing assistance. Throughout this matter, petitioner gave respondent bus passes to attend her drug screenings and parenting times. Respondent agreed to participate in drug screenings and consistently test negative, participate in individual therapy, and consistently communicate with her caseworkers. Like the respondent in *In re MJC*, the respondent before us largely did not comply with these goals. Like the respondent in *In re MJC*, ___ Mich App at ___; slip op at 9, who "repeatedly missed drug screens, . . . failed to maintain contact with his caseworker, and missed several parenting time sessions," the respondent before us attended only a few of her weekly drug screens and tested positive for cocaine multiple times. She also missed the majority of her parenting time sessions. Further, she did not contact her caseworker for weeks at a time, and she did not allow her caseworker to complete a home assessment. "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification," a respondent has "a commensurate responsibility . . . to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. Because respondent did not participate in, or benefit from, the services petitioner provided her, she did not establish

---

[7] Petitioner argues that it met its statutory obligation by filing court reports, which described respondent's level of compliance with the case-service plan. However, these two types of documents are meaningfully different. "[C]ourt reports are backward-looking documents that essentially provide status updates and brief lists of recommendations." *In re MJC*, ___ Mich App at ___; slip op at 7. Conversely, a case-service plan "should be a forward-looking blueprint for facilitating the return of the child to the parent[,]" which "detail[s] the efforts that [DHHS] will make to facilitate reunification . . . ." *Id*. Petitioner argues that its court reports in this matter were forward-looking. Yet, each court report only includes a "brief list[] of recommendations[,]" see *id*., or no recommendations at all, for services that would facilitate reunification. Petitioner's court reports were not a substitute for the case-service plans, which it did not timely submit.

any prejudice to her substantial rights from petitioner's failure to file an updated case-service plan on a 90-day basis.[8]

### III. CONCLUSION

Despite respondent establishing plain error regarding petitioner's failure to update her case-service plan as required by statute, she does not show that her substantial rights were affected. Therefore, we affirm.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan

---

[8] Even if we concluded that this issue is preserved, respondent still would not be entitled to relief because the error was harmless. See MCR 2.613(A). See also *Matter of Frasier*, 147 Mich App 492, 497-498; 382 NW2d 806 (1985) (noting that the harmless-error doctrine applies to preserved errors in termination cases). As explained, respondent's failure to benefit from the initial case-service plan shows that any regularly filed, updated case-service plans would have been unavailing.

We note that respondent argues on appeal that her "lower-court preservation of the issue--which has triggered the lower 'clear error' review standard--effectively serves to unburden her from having to prove her hypothetical reunification." However, even if we accept the argument that respondent need not prove hypothetical reunification in this case to be entitled to relief, we nonetheless conclude that under the harmless-error rule of MCR 2.613(A), she still must show some type of reasonable compliance with the initial case-service plan. To conclude otherwise, i.e., that respondent is entitled to relief simply on the basis of the statutory violation itself without regard to any actual prejudice, would elevate the statutory violation to some type of structural error requiring automatic reversal.