*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MOLTER, Minors.

UNPUBLISHED
August 21, 2025
10:18 AM

No. 373317
Kent Circuit Court
Family Division
LC Nos. 24-051187-NA;
          24-051188-NA

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's dispositional order removing his minor children, TM and CM, from his custody. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Respondent came to the attention of Children's Protective Services (CPS) in early May 2024 after respondent and the minor children were allegedly seen walking on a busy road in the middle of the night. During its investigation, CPS discovered that respondent did not provide stable housing for the children and that the children were temporarily living at the home of their paternal uncle and his girlfriend. The mother of the children was in jail in Florida.[1] At some point, the children's uncle and his girlfriend apparently indicated that different arrangements for the children's care needed to be made. Apparently, respondent was constantly dropping the children off at the home of respondent's brother and his girlfriend without their knowledge, and respondent would not pick up the children or take responsibility for them.

Consequently, CPS investigator Tyler Russell held a team decision-making meeting (TDM) with respondent to address the housing concerns and to create a plan for placement of the children. By this time, approximately a month had elapsed since CPS received the initial

---

[1] The children's mother is not a party to this appeal. We therefore will not discuss further facts pertaining to her unless necessary for our resolution of the present appeal.

complaint. Respondent was provided with information about resources and programs related to housing. However, respondent did not take advantage of these resources or adequately explain his failure to use the provided resources. He stopped contacting CPS or the Department of Health and Human Services (DHHS) after the TDM. Respondent never demonstrated that he had an adequate housing plan for the children.

Less than a week after the meeting with the CPS investigator, there was an incident during which the whereabouts of the children and respondent were unknown for a period of hours. During this time, multiple attempts to contact respondent were unsuccessful. The trial court granted the DHHS's petition for an ex parte removal order to take the children into protective custody. Respondent indicated at some point that he had picked up the children to take them to dinner, to the park, and to go swimming. Respondent returned the children to his brother's home that evening, and the DHHS subsequently removed them. An emergency removal hearing was held the next day, during which Russell testified. Following the hearing, the referee found that there was testimony showing that respondent had a problem obtaining reliable housing, that he had been provided assistance and information regarding securing housing, that he was given adequate time to act on the information he was provided, and that respondent had instead severed contact and failed to obtain housing. The circuit court entered an order adopting the recommendation of the referee.

After adjudication and disposition, the trial court ordered that the children would remain in the care and custody of the DHHS and that respondent was to comply with and benefit from his case service plan. Respondent now appeals by right.

## II. GROUNDS FOR REMOVAL

On appeal, respondent first challenges the trial court's initial removal decision on the grounds that the trial court did not make sufficient findings that that custody with respondent was contrary to the children's welfare and did not make sufficient findings that reasonable efforts to prevent the removal were made. Respondent further argues that the evidence nonetheless shows that the DHHS failed in its duty to make reasonable efforts to prevent the removal of the children.

We review for clear error a trial court's factual findings regarding grounds for removal. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). "A decision qualifies as clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted). Interpretation and application of statutes and court rules are reviewed de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

The petition was authorized in this case following the emergency removal and preliminary hearing on June 13, 2024. Pursuant to MCL 712A.13a(2), "[i]f a juvenile is alleged to be within the provisions of section 2(b) of this chapter, the court may authorize a petition to be filed at the conclusion of the preliminary hearing or inquiry," and the "court may authorize the petition upon a showing of probable cause that 1 or more of the allegations in the petition are true and fall within the provisions of section 2(b) of this chapter." Accord MCR 3.965(B)(12) ("The court may authorize the filing of the petition upon a showing of probable cause, unless waived, that one or

-2-

more of the allegations in the petition are true and fall within MCL 712A.2(b).").  Furthermore, "[u]nless the preliminary hearing is adjourned, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial."  MCR 3.965(B)(12).

Under MCL 712A.13a(9), the "court may order placement of the child in foster care if the court finds all of the following conditions:

>    (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
>    (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
>
>    (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
>    (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
>    (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

MCR 3.965(C)(2) requires the same findings before a court may order placement of the child into foster care.  Moreover, MCR 3.965(C) further provides in relevant part as follows:

>    (3) Contrary to the Welfare Findings.  Contrary to the welfare findings must be made.  If placement is ordered, the court must make a statement of findings, in writing or on the record, explicitly including the finding that it is contrary to the welfare of the child to remain at home and the reasons supporting that finding.  If the "contrary to the welfare of the child" finding is placed on the record and not in a written statement of findings, it must be capable of being transcribed.  The findings may be made on the basis of hearsay evidence that possesses adequate indicia of trustworthiness.  If continuing the child's residence in the home is contrary to the welfare of the child, the court shall not return the child to the home, but shall order the child placed in the most family-like setting available consistent with the child's needs.
>
>    (4) Reasonable Efforts Findings.  Reasonable efforts findings must be made.  In making the reasonable efforts determination under this subrule, the child's health and safety must be of paramount concern to the court.  When the court has placed a child with someone other than the custodial parent, guardian, or legal custodian, the court must determine whether reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required.  The court must make this determination at the earliest possible time, but no later than 60 days from the date of removal, and must state the factual basis for the determination in the court order.

Here, only the court's contrary-to-the-welfare and reasonable-efforts findings are at issue. The trial court found that it was contrary to the children's welfare to remain with respondent because there were ongoing concerns that respondent was leaving the children in the care of relatives without sufficient prior communication and without legal arrangements to ensure that the children could be cared for by others. The court further found that respondent unexpectedly disappeared with the children while remaining unreachable by CPS. The trial court also found that reasonable efforts had been made to prevent or eliminate the need for removal because there had been safety planning meetings and respondent had been provided with community resources for obtaining housing.

The trial court's findings are supported by Russell's testimony from the hearing. He testified that he held a TDM with respondent to address the housing concerns and to create a plan for placement of the children. Respondent was also provided with information about resources and programs related to housing, but he failed to avail himself of those resources or adequately explain his failure to use the provided resources. Furthermore, respondent stopped contacting CPS and never demonstrated that he had an adequate housing plan for the children. Russell testified that respondent had been dropping the children off at the home of the paternal uncle and his girlfriend "without their knowledge" and that respondent "would not pick them up and would not take accountability for them." Respondent would leave the children at the uncle's home without even confirming that anybody was home and because this had happened multiple times, the paternal uncle had stopped locking the door of the home to avoid inadvertently locking the children out. There was no evidence that respondent took steps to provide his brother with the legal authority to care for the children. Finally, Russell testified about respondent disappearing with the children for a period of time without prior communication and without responding to any attempts to establish contact.

Based on our review of the record, we are not left with a definite and firm conviction that a mistake was made, and respondent has thus failed to establish that a clear error occurred. *In re Williams*, 286 Mich App at 271; *In re Benavides*, 334 Mich App at 167.

Respondent also contends that he should have been immediately recognized as the legal father, rather than merely putative father, and that this somehow would have changed the outcome regarding removal. However, respondent's assertions are entirely based on speculation about what the DHHS would have done had father's legal father status been established, and respondent has not provided any citation to legal authority supporting his contention that appellate relief is warranted. This argument is therefore abandoned. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [his] claims, or unravel and elaborate for [him his] argument, and then search for authority either to sustain or reject [his] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (quotation marks and citation omitted). Similarly, to the extent respondent asserts without further development or citation of relevant legal authority that the adjudication was improper, respondent has also abandoned this argument. *Id*.

### III. ADJOURNMENT OF ADJUDICATION HEARING

Respondent next argues that the children should have been returned to his care before adjudication because the adjudication proceeding did not occur within 63 days of removal as required by MCR 3.972(A).

"Generally, this Court reviews a ruling on a motion for a continuance for an abuse of discretion." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). However, this issue is not properly preserved for appeal because respondent failed to timely raise it before the trial court. *Id*. Therefore, as respondent concedes, our review is limited to plain error affecting substantial rights. *Id*. See also *In re MJC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re MJC*, ___ Mich App at ___; slip op at 2 (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9.

MCR 3.972(A) provides, in relevant part, as follows:

> If the child is not in placement, the trial must be held within 6 months after the filing of the petition unless adjourned for good cause under MCR 3.923(G). If the child is in placement, the trial must commence as soon as possible, but not later than 63 days after the child is removed from the home unless the trial is postponed:
>
> > (1) on stipulation of the parties for good cause;
> >
> > (2) because process cannot be completed; or
> >
> > (3) because the court finds that the testimony of a presently unavailable witness is needed.
>
> When trial is postponed pursuant to subrule (2) or (3), the court shall release the child to the parent, guardian, or legal custodian unless the court finds that releasing the child to the custody of the parent, guardian, or legal custodian will likely result in physical harm or serious emotional damage to the child.

MCR 3.903(C)(10) defines "placement" as "court-approved transfer of physical custody of a child to foster care, a shelter home, a hospital, or a private treatment agency." "Good cause" generally means "a legally sufficient or substantial reason" for the court to grant an adjournment. *In re Utrera*, 281 Mich App at 11 (quotation marks and citation omitted).

In the present case, the initial adjudication trial was scheduled to be heard by the referee on July 30, 2024, which was within the limit provided by MCR 3.972(A) for children in placement. Although respondent now asserts on appeal that this was somehow improper, a referee may generally conduct the trial unless a party has demanded a judge or jury and respondent has not provided any explanation or analysis to support his assertion that the initial assignment to a referee was improper in this case. See MCR 3.913(A)(1) and (B); MCR 3.912(A) and (B).

The record indicates that the July 30 adjudication trial was adjourned for good cause shown and it appears from the transcript of the July 30 hearing that no party was opposed to the adjournment for this reason. The adjudication trial subsequently commenced before the judge on September 11, 2024. The fundamental basis for respondent's assertion of plain error is his own mistaken contention that the matter was improperly assigned to a referee initially. As we have explained, this premise is incorrect. MCR 3.913(A)(1) and (B); MCR 3.912(A) and (B). There is also no indication in the record that the trial was adjourned under MCR 3.972(A)(2) or (3), so respondent's argument regarding the sentence following those provisions is immaterial. Respondent has thus failed to show plain error. *In re Utrera*, 281 Mich App at 8.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica