*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. SAUBER, Minor.

UNPUBLISHED
June 12, 2026
3:09 PM

No. 378068
Branch Circuit Court
Family Division
LC No. 25-006855-NA

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his minor child, JS, pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse to child and reasonable likelihood child would suffer injury or abuse if placed in parent's home) and (k)(*ii*) (parent abused child and abuse included criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate and reasonable likelihood of harm if returned to parent's care). We affirm the trial court's conclusion that statutory grounds for termination exist, but vacate the trial court's best-interests determination and remand for further proceedings.

## I. BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), became involved in this case in January 2025 after Children's Protective Services (CPS) received allegations of sexual abuse of then-four-year-old JS by respondent. At that time, JS was living with her mother[1] but visiting respondent almost daily. DHHS investigated the allegations and determined that, during a medical examination by a sexual assault nurse examiner (SANE), JS disclosed that respondent was bathing her every visit and always used his bare hands, rather than a washcloth, to clean her genital area. JS also demonstrated how respondent touched her genital area during the baths and, while doing so, pointed to her clitoral area and stated that respondent placed his fingers on that area and "wiggle[d]" them. JS also tested positive for a urinary tract infection. JS's mother informed CPS investigators that in the few weeks prior, JS had demonstrated significant behavioral

---

[1] JS's mother was not a respondent in the proceedings below and is not involved in this appeal.

changes, including night terrors, sleepwalking, and constant complaints that her vaginal area was irritated and itchy. JS had, according to JS's mother, also "been more shut down and scared," and she started refusing to visit respondent. JS's mother became particularly concerned about these behaviors because they began shortly after respondent had started sending JS home with no underwear on and after he had repeatedly expressed that he was sexually attracted to the mother's minor daughter (JS's half-sister)[2] and wished that he could have had a sexual relationship with her. Respondent was also interviewed by CPS investigators and police, and although he denied sexually abusing JS, he admitted to touching JS's genital area with his bare hands while bathing JS and that he had expressed that he was sexually attracted to JS's half-sister and wished that he had had a sexual relationship with her.

Shortly thereafter, DHHS filed a petition requesting that the trial court remove JS from respondent's care, take jurisdiction over JS, and terminate respondent's parental rights at initial disposition. Following a preliminary hearing, the trial court authorized the petition, instructed that JS remain out of respondent's care and in the care of her mother under the supervision of DHHS, and suspended respondent's parenting time. Following an adjudication bench trial in April 2025—at which the court received documentary evidence and testimony from JS's mother, a CPS investigator, an investigating officer, and the SANE who performed JS's medical examination—the court assumed jurisdiction.

The trial court thereafter conducted a two-day initial dispositional hearing, which also acted as a termination hearing because DHHS had petitioned for termination at initial disposition.[3] During the hearing, the court received additional testimony from respondent and two of his siblings. Respondent's siblings both testified that JS and respondent appeared to have a strong bond and that they believed that JS's allegations of sexual abuse were simply based on JS's misunderstanding of the situation. During his testimony, respondent admitted to touching JS in the way that she described to the SANE but denied ever doing so for a sexual purpose or in such a way that penetrated her vagina. Respondent also asserted that he bathed JS so frequently because JS had bathroom-related accidents and he wanted to ensure that her genital area was thoroughly cleaned, and he believed that JS simply misunderstood what was going on during the baths. Respondent also acknowledged that he had admitted to others that he had sexual feelings for JS's half-sister and had wanted to have a sexual relationship with her.

At the conclusion of the hearing, after considering all the evidence, testimony, and arguments provided by the parties, the trial court found that statutory grounds for termination under MCL 712A.19b(3)(b)(*i*) and (k)(*ii*) had been established by clear and convincing evidence. The court also found, by a preponderance of the evidence, that termination of respondent's parental rights was in JS's best interests. The trial court subsequently issued an order terminating respondent's parental rights as previously described. This appeal followed.

---

[2] JS's half-sister turned 18 years old at some point during the proceedings.

[3] The first day of the hearing occurred in July 2025 and the second occurred in September 2025.

## II. STANDARDS OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "We review for clear error both the trial court's decision that a statutory ground for termination has been established and the court's decision regarding the child's best interests." *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 3. Statutory grounds for termination must be found by clear and convincing evidence, and termination must be found to be in the child's best interests by a preponderance of the evidence. *Id*. at ___; slip op at 3. We give "deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

## III. STATUTORY GROUNDS

On appeal, respondent argues that the trial court reversibly erred by finding that clear and convincing evidence supported termination of his parental rights under at least one of the cited statutory provisions. We disagree.

A court may terminate parental rights under MCL 712A.19b(3)(b)(*i*) if it finds by clear and convincing evidence that "[t]he parent's act caused . . . sexual abuse" to the child or the child's sibling and that "there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." Uncorroborated testimony of a victim of sexual abuse can establish by clear and convincing evidence that sexual abuse occurred. See *In re HRC*, 286 Mich App 444, 460-461; 781 NW2d 105 (2009). " '[S]exual abuse' " includes "sexual contact," MCL 722.622(q), which is defined, in relevant part, as "the intentional touching of the victim's . . . intimate parts . . . , if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose . . . ," MCL 750.520a(q). " 'Intimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f).

Defendant does not dispute that he, on multiple occasions, touched JS's genital area with his bare fingers while bathing JS. He maintains, however, that he did so not for a sexual purpose, but instead for the "non-sexual" purpose of "provid[ing] necessary hygiene" for JS. Based on the record evidence before it at the time of its termination decision, the trial court concluded otherwise, and we see no basis to disrupt that conclusion.

The record evidence supported the trial court's finding that respondent had sexually abused JS. See MCL 712A.19b(3)(b)(*i*). The SANE testified that during her medical examination, JS reported that respondent bathed her "every day" during their visits after school, and that JS used her own hand to demonstrate how respondent touched her with his bare fingers during those baths. During her demonstration, JS indicated to the SANE that respondent "focus[ed] right around the clitoris" and reported that " '[h]e goes, wiggle, wiggle, wiggle with his finger,' right there at the clitoris." Although respondent initially claimed that all the baths were necessary to clean JS after bathroom-related accidents, JS's mother testified that there was no reason for respondent to be bathing JS every day because she had been fully bathroom-trained for nearly two years and, by

that point, had very few bathroom-related accidents. And respondent, for his part, subsequently agreed during his testimony that JS did not have accidents very often. JS's mother and respondent's sister both testified that JS's paternal grandmother ordinarily bathed JS when JS visited respondent, and JS's mother testified that respondent did not begin bathing JS until more recently when "he had been having her [in his custody] more."

Furthermore, testimony from multiple witnesses, including respondent, established that respondent, shortly before or around the same time that JS first began exhibiting physical and behavioral issues, had admitted to being sexually attracted to JS's half-sister while she was still a minor and that he wished he could have had a sexual relationship with her. Based on his own testimony, respondent had raised JS's half-sister as a daughter since she was 13 years old. And although respondent denied touching JS's genital area for a sexual purpose, the trial court made clear during its findings that it believed JS's allegations of sexual abuse and that it did not find respondent's testimony regarding the matter to be as credible as JS's allegations and the testimony of other witnesses. We see no basis to disrupt that credibility assessment. See *TK*, 306 Mich App at 710; see also *HRC*, 286 Mich App at 460.

The record also supported the trial court's finding that there was a reasonable likelihood that JS would suffer injury or abuse in the foreseeable future. See MCL 712A.19b(3)(b)(*i*). JS reported that respondent bathed her frequently and would touch her genital area with bare fingers during every bath. These repeated incidents of sexual abuse alone demonstrated a reasonable likelihood that JS would suffer future abuse if placed with respondent. But respondent's expressed sexual feelings toward JS's half-sister only further support this finding, as they are probative of how respondent may treat JS in the future. See *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020); *HRC*, 286 Mich App at 460-461. As discussed, respondent admitted to having sexual feelings for JS's half-sister and wanting a sexual relationship with her while she was still a minor. The trial court indicated that it was significantly concerned that respondent could develop similar sexual feelings toward JS as she got older, especially given that respondent had already touched JS in "a sexual area." In light of the record evidence, we see no clear error in that finding. See *Simpson*, ___ Mich App at ___; slip op at 3; *TK*, 306 Mich App at 710.

In sum, the totality of the record before the trial court provided clear and convincing evidence that respondent sexually abused JS and that there was a reasonable likelihood that JS would experience additional injury or abuse in the foreseeable future if placed with respondent. See MCL 719A.19b(3)(b)(*i*). Respondent has failed to show how the trial court reversibly erred in reaching this conclusion.[4]

## IV. BEST-INTERESTS DETERMINATION

Respondent also argues that the trial court erred by finding that termination of his parental rights was in JS's best interests. Specifically, respondent argues that the court clearly erred in its

---

[4] Given our conclusion regarding this statutory ground for termination, we need not address the trial court's findings under MCL 712A.19b(3)(k)(*ii*). See *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 338; 985 NW2d 912 (2022).

-4-

best-interests determination because it failed to consider JS's relative placement and whether it weighed against termination. We agree.

When making its best-interests findings, the trial court duly focused on JS rather than on respondent. See *Mota*, 334 Mich App at 321. But the sum total of the court's best-interests findings was the following statement: "I would find the best interest of the child would be safety and security, and that's the concern that we have is the safety of the child and whether will be safe, and because of that, I am going to go ahead and terminate [respondent's] rights at this point." While JS's safety and security were undoubtedly proper and highly relevant considerations in the court's best-interests determination, "[t]he trial court should weigh all the evidence available to determine" whether termination is in the child's best interests, and "it should consider a variety of factors" when doing so. *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 4 (quotation marks and citation omitted). And indeed, as part of that assessment, the court "was required to expressly consider" JS's relative placement with her mother and how it "weigh[ed] against termination." *Id*. at ___; slip op at 4-5; see also *Mota*, 334 Mich App at 321.

Such considerations, however, "were wholly absent from the trial court's best-interests determination" in this case. *CJM*, ___ Mich App at ___; slip op at 5-6. The court mentioned at one point that JS was placed with her mother at the time of termination, but the court did not substantively address that fact or explain how it may have factored into its best-interests determination. As this Court has repeatedly made clear, "a trial court's failure to explicitly address whether termination is appropriate in light of the child's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*. at ___; slip op at 6 (cleaned up). Furthermore, there was evidence and testimony presented to the trial court regarding a number of other factors potentially relevant to whether termination was in JS's best interests, including the parent-child bond between respondent and JS, respondent's parenting ability, respondent's visitation history with JS, and respondent's mental health. See, e.g., *id*. at ___; slip op at 4-5; *In re MJC*, 349 Mich App 42, 62; 27 NW3d 122 (2023). The court's findings, however, shed no light on whether and how those considerations may have informed the court's best-interests assessment.

Accordingly, while it might be that termination of respondent's parental rights was ultimately in JS's best interests, the trial court's findings in this case are too deficient to permit proper appellate evaluation of that conclusion. See, e.g., *CJM*, ___ Mich App at ___; slip op at 6; *In re Guardianship of AMMB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915); slip op at 12 (noting that a trial court's factual findings and legal conclusions on the record must be "sufficient to facilitate appellate review"); *In re Beers/LeBeau-Beers*, 325 Mich App 653, 677-678; 926 NW2d 832 (2018) (concluding that this Court could not "decide the matters [at issue] on the basis of the existing record" while still duly avoiding the "danger of engaging in improper appellate fact-finding"); see also MCR 3.977(I)(1). Given the court's failure to expressly consider JS's relative placement as weighing against termination, as well as various other factors that may be relevant to its best-interests determination, we must vacate the trial court's best-interests determination and remand for the trial court to conduct a new best-interests hearing. See *CJM*, ___ Mich App at ___; slip op at 5-6.

## V.  CONCLUSION

We affirm the trial court's determination that statutory grounds for termination existed but vacate the trial court's best-interests determination and remand for further proceedings consistent with this opinion.  We retain jurisdiction.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel

# Court of Appeals, State of Michigan

## ORDER

Philip P. Mariani
Presiding Judge

IN RE J SAUBER MINOR

Christopher M. Murray

Docket No. 378068

LC No. 25-006855-NA

Sima G. Patel
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings. We retain jurisdiction. After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal. Any challenges to the trial court's decisions on remand must be raised in this appeal. Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal. The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Appellant must initiate the proceedings on remand within 21 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. As stated in the accompanying opinion, the trial court must reconsider and make due findings on the record regarding whether the termination of respondent's parental rights is in the child's best interests. The proceedings on remand are limited to this issue.

The parties must serve copies of their filings in the trial court on this Court. Appellant must file with this Court copies of all orders entered on remand within seven days of entry.

Appellant must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

_____June 12, 2026_____
Date

_____
Chief Clerk